[Cite as *State ex rel. Boggs v. Cleveland*, 2023-Ohio-3871.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SUSAN BOGGS, STATE EX REL.,
ET AL.,                                              :

      Relators-Appellants,              :

                                 No. 112111

      v.                                      :

CITY OF CLEVELAND,                        :

      Respondent-Appellee.            :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 26, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-08-666718

---

### *Appearances:*

The Lindner Law Firm, LLC, and Daniel F. Lindner, *for appellants*.

Mark Griffin, Director of Law, and Elena N. Boop, Chief Trial Counsel, and James R. Russell, Jr., Chief Assistant Director of Law, and Gilbert E. Blomgren, Assistant Director of Law, *for appellee*.

MARY J. BOYLE, J.:

{¶ 1} Relators-appellants, Susan Boggs ("Boggs"), Fouad Rachid ("Rachid"), and Fouad Inc. (collectively, "Relators"), have asked us to determine

"whether [respondent-appellee, the city of Cleveland ("Cleveland")] [i]s empowered to take real property that is located just outside of its border" after the trial court granted summary judgment in Cleveland's favor and determined Relators lacked standing to obtain a writ of mandamus compelling Cleveland to commence appropriation proceedings of Fouad Inc.'s property ("Property") located near Cleveland Hopkins International Airport ("Airport") in Olmsted Township. For the reasons set forth below, we affirm.

## I.   Facts and Procedural History

{¶ 2}   Since 2002, Relators have filed several complaints against various governmental agencies regarding the Airport's effect on the value of their home and the alleged taking of the Property following the expansion of two of the Airport's runways. Relators first filed a class-action mandamus action against Cleveland in the Cuyahoga County Court of Common Pleas, which was dismissed for failure to state a claim upon which relief could be granted. In August 2008, Relators commenced the underlying writ of mandamus action in Cuyahoga County Court of Common Pleas under the Fifth Amendment to the United States Constitution, the Ohio Constitution, and other applicable laws.[1] In September 2008, the case was removed to the U.S. District Court, Northern District of Ohio, where the parties stipulated to dismiss the case without prejudice and toll the statute of limitations while Relators exhausted their administrative remedies.

---

[1] In the original complaint, Boggs and Rachid's daughter was named as a relator in the following manner: "Fouad Rachid, for himself and as next friend for Nicole Rachid, a minor."

{¶ 3} In 2016, Relators initiated administrative proceedings against Cleveland by filing a complaint with the Federal Aviation Administration ("FAA"). The FAA's Director of Compliance entered an order granting summary judgment to Cleveland in 2017. Relators appealed the Director of Compliance's order to the Associate Administrator of the FAA, who affirmed the decision. Relators then filed an appeal in the U.S. Sixth Circuit Court of Appeals challenging the Associate Administrator's final order. In March 2019, the Sixth Circuit affirmed the FAA's order granting summary judgment to Cleveland, finding the Property was not within the "landing area" of the Airport under 49 U.S.C. 40102(a)(28) because "the statutory definition of landing area describes an area of land and water, not air." *Boggs v. FAA*, 764 Fed.Appx. 480 (6th Cir.2019).

{¶ 4} In November 2019, the case was reopened in the U.S. District Court, Northern District of Ohio after Relators notified the court that all administrative remedies had been exhausted and filed an amended complaint. In May 2021, the Northern District of Ohio granted Cleveland's motion for summary judgment, declined to exercise supplemental jurisdiction, and remanded Relators' Ohio Constitution and state law claims to the trial court for further proceedings. *Boggs v. Cleveland*, N.D.Ohio No. 1:08-CV-02153-JDG, 2021 U.S. Dist. LEXIS 101308 (May 28, 2021).

{¶ 5} The underlying case resumed in the Cuyahoga County Court of Common Pleas in July 2021, and an amended complaint was filed in December

2021.[2] Therein, Relators demanded a writ of mandamus compelling Cleveland to exercise its power of eminent domain and comply with the state and federal law involving the appropriation of the Property. Relators also sought damages, including attorney fees, taxes, mortgage expenses and upkeep, and water expenses.

{¶ 6} According to the amended complaint, Boggs and Rachid are husband and wife and Fouad, Inc. is Rachid's professional corporation. Relators sought to compel Cleveland to commence appropriation proceedings for the taking of the Property that is owned by Fouad Inc. and resided in by Boggs, Rachid, and their daughter. Relators alleged that low-flying aircraft continuously violated Relators' airspace and trespassed on the Property. Relators claimed the expansion of the Airport's runways made their home uninhabitable and vibrations, noise, and filth from landings and takeoffs prevented them from fully using and enjoying the Property. Relators further claimed that low-flying aircraft devalued the Property. Relators do not dispute the following facts as set forth by the trial court:

> Fouad, Inc. is the titled owner to the residential property located at 24505 Barrett Rd., Olmsted Township, Ohio ("Property"). The Property lies to the south and west of Rocky River Reservation. Slightly to the northeast of the park lies Cleveland Hopkins International Airport [("Airport")]. The Airport is a municipal facility owned and operated by [Cleveland].

> The Airport has been in the same location since 1925, although there have been several expansions and modifications since that time. This case concerns the expansion of runways labelled 6L-24R and 6R-24L. Runways 6L-24R and 6R-24L run parallel to each other. They lie on a diagonal in the northeast and southwest direction. The Airport

---

[2] In the amended complaint, "Nichole Rachid" was listed amongst Relators.

boundary, where the runways terminate, lies across the road from [Rocky River] Reservation.

The Parties have stipulated to the following timeline regarding the expansion of the runways, and have not disputed this order of events:

- July 11, 1995: Fouad Inc. acquires the Property;
- January 2001: Construction begins on new runway 6L-24R;
- December 2002: Runway 6L-24R opens at an initial length of 7,000 feet (Stage 1);
- January 2003: Construction restarts on runway 6L-24R;
- August 2004: Runway 6L-24R opens at a final length of 9,000 feet (Stage 2);
- May 2007: Construction begins on runway 6R-24L extension;
- August 1, 2008: Relators file the instant action against [Cleveland];
- December 2008: Runway 6R-24L opens at a final length of 9,956 feet[.]

Relators generally claimed that the expansion of the runways resulted in substantially increased air traffic directly over the Property. They claim that the proximity of the aircraft[s] has caused substantially increased noise and vibrations. As a result, they argue [Cleveland] has in effect completed a taking because the noise and vibrations substantially diminished the value of their Property. Although they have contended that the Property is subject to increased noise and vibrations, the Relators have never abandoned its use as a primary residence.

Unsurprisingly, there were other properties in the area that would be affected by the runway expansions. [Cleveland] purchased an "avigation easement" with the Cleveland Metroparks. [Cleveland] also obtained similar easements for other properties in Olmsted Township. In exchange for the easement, [Cleveland] provided funds to these properties for the purchase and installation of noise-reducing material. The Relators declined this offer.

(Judgment Entry, Nov. 1, 2022.)

{¶ 7} In their respective depositions, Relators testified that aircraft began flying lower and directly over the Property following the expansion of the Airport's

runways. Rachid first noticed the noise, estimated that aircraft flew only 100 feet higher than their house, and expressed concern for the house and his family. Boggs believed Cleveland violated ordinances and statutes, brought commercial and military aircraft within a couple hundred feet of their home, and trespassed on the Property's airspace.

{¶ 8} Relators further testified that trees were killed, ground water was degraded, and their house sustained structural damage. Boggs offered testimony that aircraft emitted noise and fuel onto the Property and radio signals interfered with their phone, television, and internet. Rachid testified that he observed aircraft physically touching the tops of trees on the Property and feared them striking power lines or their house. Rachid expressed concern that if anything happened on or to an aircraft, it may land on the Property, hurt his family, and destroy their house.

{¶ 9} Finally, Boggs testified that Relators no longer enjoyed living on the Property. Boggs believed the Property no longer had any value as a residential property and was unsuitable for residential use because of the noise and shaking caused by low-flying air traffic. Boggs explained that they could not think or sleep because the noise was so loud and felt they had no control of the Property. Thus, Boggs testified that Relators no longer wanted to live on the Property, but would not profit from its sale.

{¶ 10} In March 2022, both parties moved for summary judgment. In their motion, Relators argued that as a result of the Airport's runway expansion, the noise, wind shear, and runoff usurped their right to the quiet enjoyment of the Property.

Relators claimed that they had a clear right to relief under the constitutions of Ohio and the United States and through caselaw interpreting those provisions. Cleveland asserted that Relators' claim was subject to, at most, a four-year statute of limitations; Relators lacked standing for a mandamus claim because they had not suffered an injury-in-fact and their alleged injuries were not redressable; and Relators could not present the clear and convincing evidence necessary to meet the legal requirements of a mandamus claim

{¶ 11} In April 2022, the parties opposed each other's motions and Cleveland filed a reply in support of its own. In July 2022, Relators filed their own reply in support and included as exhibits an affidavit from Boggs, two noise compatibility studies, and the invoice and report of their appraisal expert. In response, Cleveland filed a motion to strike the exhibits attached to Relator's reply. Cleveland claimed that neither the exhibits, nor the newly raised arguments based on those exhibits, could be introduced for the first time in Relators' reply brief.

{¶ 12} In November 2022, the trial court denied Relators' motion for summary judgment and Cleveland's motion to strike and granted Cleveland's motion for summary judgment. In a comprehensive journal entry, the trial court concluded that the statute of limitations did not bar Relators' action, but Relators lacked standing because the claim was not redressable by a writ of mandamus. In so ruling, the trial court looked to R.C. 719.02 and 719.01, which provide municipalities with the ability to acquire property outside of its limits for certain enumerated purposes, and R.C. 4561.01(C), (D), and (E) for the definitions of

"airport," "landing field," and "air navigation facility" as utilized in R.C. 719.01(O). The trial court concluded that Relators' claim did not fall within the statutory authorization prescribed by R.C. 719.01(O) because "Relators cannot demonstrate how planes in the airspace above the Property require the City to obtain title to it under statutory authority. The simple fact that aircraft may fly over the Property does not transform it into land that is reasonably necessary for the establishment of an air navigation facility [as argued by Relators]." (Journal Entry, Nov. 1, 2022.)

{¶ 13} The trial court also relied upon two Ohio Supreme Court decisions, *Clifton v. Blanchester*, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, and *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, for the proposition that a property owner has no redressable regulatory-taking claim against a municipality when the affected property lies outside of its limits absent statutory authority. The trial court noted that "Relators do not allege a regulatory taking, they are alleging a physical invasion of airspace[,]" but concluded that "the reasoning in *Clifton* and *Moore* on redressability could equally apply to physical takings" and "it is difficult for this Court to see how it can issue the writ in absence of explicit statutory authorization under those precedents." (Journal Entry, Nov. 1, 2022.)

{¶ 14} Relators now appeal, raising the following two assignments of error for review, which shall be addressed out of order for ease of discussion.

> **Assignment of Error I:** The trial court erred by granting summary judgment to [Cleveland] on the grounds of lack of standing. [Cleveland] is statutorily authorized to appropriate

appellee's property under RC §719.02 and §719.01(o), as the Property is located within the area of the "Airport" and "Landing Field" as defined by RC §4561.01 et seq. "Airport" and a "Landing Field" both include within their definitions "Land" required "to permit the landing or taking off of aircraft with safety and used for that purpose…" and "Land" includes the "airport's clear zone surface, horizontal surface, conical surface, primary surface, approach surface, or transitional surface. (RC §4561.31 and §4561.32). [The] Property lies within all four (4) of these specified zones of "Airport" and "Landing Field" "Land."

**Assignment of Error II:** The trial court erred by granting summary judgment to appellee in exclusive reliance upon two (2) regulatory taking cases, *Clifton* and *Moore*, when the court made the express ruling that the present case involves a physical take. [Cleveland] can be compelled to commence appropriation for its physical taking of [the] Property regardless of whether there is statutory authority.

{¶ 15} In the event this court sustains Relators' assignments of error and reverses the trial court's granting of summary judgment in its favor, Cleveland raises the following cross-assignment of error:

**Cross-assignment of Error:** The Trial Court's judgment in favor of [Cleveland] should be affirmed because the applicable statute of limitation bars the remaining claim against it.[3]

## II. Law and Analysis

### A. Standard of Review: Motion for Summary Judgment

{¶ 16} In both assignments of error, Relators argue that the trial court erred in granting Cleveland's motion for summary judgment.

---

[3] App.R. 3(C)(2) provides that "[a] person who intends to defend an order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the order is not required to file a notice of cross-appeal or to raise a cross-assignment of error." Therefore, as previously noted by this panel in its denial of Relators' motion to strike cross-appeal issues, Cleveland is permitted to argue alternate grounds in support of the trial court's judgment since it is not seeking to change the result.

{¶ 17} An appellate court reviews the grant or denial of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). In a de novo review, the appellate court affords no deference to the trial court's decision and independently reviews the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.); *Smathers v. Glass*, Slip Opinion No. 2022-Ohio-4595, ¶ 30. Summary judgment is appropriate if (1) no genuine issue of any material fact remains; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Grafton* at 105.

{¶ 18} The party moving for summary judgment bears the burden of demonstrating that no genuine issues of material fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). The moving party has the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Id.* "To accomplish this, the movant must be able to point to the evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment." *Id.* These include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any." Civ.R. 56(C). "These evidentiary materials must show

that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Dresher* at 293.

{¶ 19} After the moving party has satisfied this initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that there is a genuine issue of material fact. *Id.* "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Am. Dental Ctr. v. Wunderle*, 8th Dist. Cuyahoga No. 62548, 1993 Ohio App. LEXIS 4437, 4 (Sept. 16, 1993), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This court has explained:

> "[T]he plain language of the summary judgment rule mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of a non-moving party's case necessarily renders all other facts immaterial."

(Citations omitted.) *Corradi v. Soclof*, 8th Dist. Cuyahoga No. 67586, 1995 Ohio App. LEXIS 2162, 6 (May 25, 1995), quoting *Toensing v. MK-Ferguson Co.*, 76 Ohio App.3d 826, 830, 603 N.E.2d 396 (8th Dist.1992), citing *Celotex Corp.* at 323-324.

{¶ 20} Thus, we independently review Cleveland's motion for summary judgment to determine whether any genuine issues of material fact remain as to the essential elements of Relators' writ of mandamus action.

### B. Writs of Mandamus, Takings, and Standing

{¶ 21} Relators claim that Cleveland can be compelled through a writ of mandamus to commence appropriation for its physical taking of the Property.

{¶ 22} "Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." *State ex rel. Shemo v. Mayfield Hts.*, 95 Ohio St.3d 59, 63, 765 N.E.2d 345 (2002), *modified in part on other grounds*, 96 Ohio St.3d 379, 2002-Ohio- 4905, 775 N.E.2d 493, citing *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.*, 92 Ohio St.3d 529, 533, 751 N.E.2d 1032 (2001). To be entitled to the requested writ of mandamus, a relator must establish by clear and convincing evidence that there is (1) a clear legal right to the relief requested, (2) a clear legal duty on the part of respondent to provide it, and (3) a lack of an adequate remedy in the ordinary course of law. *State ex rel. Balunek v. Marchbanks*, Slip Opinion No. 2023-Ohio-2517, ¶ 9, citing *State ex rel. New Wen, Inc. v. Marchbanks*, 159 Ohio St.3d 15, 2020-Ohio-63, 146 N.E.3d 545, ¶ 15.

{¶ 23} However, litigants must have standing to be entitled to a court's determination regarding the merits of the issues presented:

> "It is well established that before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 469, 1999 Ohio 123, 715 N.E.2d 1062. "'Standing' is defined at its most basic as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27, quoting Black's Law Dictionary (8th Ed.2004) 1442. "'"[T]he question of standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy * * *' as to ensure that 'the dispute sought to be adjudicated will be presented in an

adversary context and in a form historically viewed as capable of judicial resolution.'"'" *Id.*, quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 178-179, 64 O.O.2d 103, 298 N.E.2d 515, quoting *Sierra Club v. Morton* (1972), 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636, quoting *Baker v. Carr* (1962), 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663, and *Flast v. Cohen* (1968), 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947."

*Moore*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, at ¶ 21, quoting *Clifton*, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, at ¶ 15. In order to establish standing, plaintiffs or relators must demonstrate three factors: injury, causation, and redressability, i.e., that they suffered (1) any injury that is (2) fairly traceable to the defendant or respondent's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief. *Id.* at ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

{¶ 24} We shall now consider whether the trial court erred in granting Cleveland's motion for summary judgment on the basis that Relators' claim is not redressable by writ of mandamus through constitutional or statutory authority and Relators lack standing to bring the action.

### 1. Constitutional Authority

{¶ 25} In the second assignment of error, Relators claim that they have standing to bring this action because, according to *State ex rel. Royal v. Columbus*, 3 Ohio St.2d 154, 158, 209 N.E.2d 405 (1965), a taking exists under Section 19, Article I of the Ohio Constitution when airflights are so low and so frequent as to be a direct and immediate interference with enjoyment and use of land. Relators claim that "there are roughly twenty four thousand (24,000) flights per year that come

within 200 feet of [their] home." Thus, Relators conclude that Section 19, Article I of the Ohio Constitution provides Cleveland with authority to appropriate the Property, making their claim redressable by writ of mandamus.

{¶ 26} "The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation." *Shemo,* 95 Ohio St.3d at 63, 765 N.E.2d 345, citing Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution. The Ohio Supreme Court held that Section 19, Article I of the Ohio Constitution "limits compensation to those situations where private property is *taken* for public use, in contrast to the constitutions of some states, which guarantee compensation for private property that is taken for or *damaged by* public use." (Emphasis sic.) *State ex rel. Blank v. Beasley*, 121 Ohio St.3d 301, 2009-Ohio-835, 903 N.E.2d 1196, ¶ 17, citing *State ex rel. Fejes v. Akron*, 5 Ohio St.2d 47, 50, 213 N.E.2d 353 (1966), citing *McKee v. Akron*, 176 Ohio St. 282, 284, 199 N.E.2d 592 (1964). Therefore, a property owner must prove something more than damage to his property to demonstrate a compensable taking. *Id.* Under certain circumstances, a taking exists "whenever airflights 'are so low and so frequent as to be a direct and immediate interference with enjoyment and use of the land.'" *Royal* at 158 (where calculations for "glide angle height above house" for each of the properties ranged from a minimum of 50 to 60 feet to a maximum of 90 feet and airflights directly above Royal's land disturbed sleep, loosened plaster on wall, jarred dishes and other objects from shelves, and damaged a window, fireplace, and window frame), quoting

*United States v. Causby*, 328 U.S. 256, 266, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) (where low-flying military aircrafts passed over the property "in considerable numbers and rather close together" and "close enough at times to appear barely to miss the tops of the trees," destroying the use of the property as a commercial chicken farm, depriving the Causby family of sleep, and causing them to be nervous and frightened).

{¶ 27} However, Section 19 of the Ohio Constitution, Article I is limited by Section 3, Article XVIII, which describes the powers of municipal corporations: "[M]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce *within their limits* such local police, sanitary and other similar regulations, as are not in conflict with general laws." (Emphasis added.) "All powers of local self-government" include the power of eminent domain established in Section 19, Article I of the Ohio Constitution. *Clifton,* 131 Ohio St.3d 287, 2012-Ohio-3897, 975 N.E.2d 414, at ¶ 27, citing *State ex rel. Bruestle v. Rich*, 159 Ohio St. 13, 14, 110 N.E.2d 778 (1953). "However, aside from acquiring property to operate a public utility that serves its own residents, a municipality has no authority to exercise its inherent eminent-domain powers beyond its corporate limits." *Id.*, citing *Britt v. Columbus*, 38 Ohio St.2d 1, 309 N.E.2d 412 (1974), paragraph one of the syllabus; Section 4, Article XVIII, Ohio Constitution; *Moore,* 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, at ¶ 27 ("Ohio law holds that a municipality has no authority to appropriate property outside of its jurisdictional limits."). In holding that "no power of eminent domain beyond the geographical limits of a municipality

is included in the power of local self-government granted to municipalities by Section 3, Article [XVIII,]" the Ohio Supreme Court explained:

> "The power of local self-government granted to municipalities by Article [XVIII] relates solely to the government and administration of the internal affairs of the municipality, and, in the absence of statute conferring a broader power, municipal legislation must be confined to that area. (*See Prudential Co-Operative Realty Co. v. City of Youngstown*, 118 Ohio St. 204, 160 N.E. 695.) Where a proceeding is such that it affects not only the municipality itself but the surrounding territory beyond its boundaries, such proceeding is no longer one which falls within the sphere of local self-government but is one which must be governed by the general law of the state.
>
> To determine whether legislation is such as falls within the area of local self-government, the result of such legislation or the result of the proceedings thereunder must be considered. If the result affects only the municipality itself, with no extra-territorial effects, the subject is clearly within the power of local self-government and is a matter for the determination of the municipality. However, if the result is not so confined it becomes a matter for the General Assembly."

*Britt* at 7, quoting *Beachwood v. Bd. of Elections*, 167 Ohio St. 369, 371, 148 N.E.2d 921 (1958). The Ohio Supreme Court further explained that in enacting R.C. 719.02 and 719.01, the General Assembly provided municipalities with additional authority to use eminent-domain powers to acquire property outside of their corporate limits "when reasonably necessary." *Clifton* at ¶ 28. But this statutory authority is "only for certain enumerated public purposes." *Id.,* citing R.C. 719.02 and 719.01.

{¶ 28} On appeal, Relators argue that "[t]he trial court errantly applied two * * * Ohio Supreme Court cases — *Clifton* and *Moore* — whose holdings expressly were confined to only regulatory takings and applied them to the present physical taking case." (Emphasis omitted.) In *Clifton*, the court addressed the issue of

"whether a property owner has a redressable regulatory-taking claim against a municipality when the affected property is beyond the municipality's corporate limits." *Id*. at ¶ 25. The *Clifton* Court held:

> [A] municipality has no authority to initiate appropriation proceedings in response to a property owner's complaint in mandamus alleging a regulatory-taking claim if the affected property lies outside the municipality's limits. A municipality's liability for a regulatory taking is limited to the property that it is authorized to regulate, i.e., the property within its limits. Accordingly, a property owner has no redressable regulatory-taking claim against a municipality when the affected property lies outside the municipality's corporate limits.

*Id*. at ¶ 29. Similarly, in *Moore*, the property owners alleged that a municipality's rezoning of land resulted in the regulatory taking of their adjacent property, which was located in a different municipality. *Id*. at ¶ 2. Consistent with *Clifton*, the *Moore* court held "that the property owners do not have standing to bring a mandamus action to compel a municipality to appropriate property outside the municipality's jurisdiction." *Id*. at ¶ 3.

{¶ 29} Relators rely on *State ex rel. Lillis v. Summit*, 2017-Ohio-1539, 88 N.E.3d 1267 (9th Dist.), to support their claim that *Clifton* and *Moore* are inapplicable to physical takings. Cleveland argues that *Lillis* did not hold that the precedents set forth *Clifton* and *Moore* do not apply to physical takings, rather the Ninth District Court of Appeals found that those property owners could rely on provisions of R.C. 719.01 to establish standing.

{¶ 30} In *Lillis*, owners of real property located in Coventry Township sought a writ of mandamus to compel Akron to institute eminent domain proceedings after

an alleged taking-by-flooding caused by Akron's storm water management systems. *Id.* at ¶ 3-4. Relying on *Clifton,* 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, and *Moore*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, the trial court dismissed the action for lack of standing because "'Ohio law is clear that property owners do not have standing to bring a mandamus action to compel a municipality to appropriate property outside the municipality's jurisdiction' and 'none of the enumerated purposes listed in R.C. 719.01 include appropriating property for an alleged taking.'" *Lillis* at ¶ 7.

{¶ 31} On appeal, the Ninth District noted that the underlying case involved a physical taking on the basis of flooding, rather than regulatory taking based on zoning as in *Clifton* and *Moore,* which limited their holdings to facts and postures presented therein. *Id.* at ¶ 16, 18. The appellate court further noted that "*Clifton* 'does not stand for the proposition that a property owner always lacks standing to bring a mandamus claim against a municipality when the affected property is outside the municipality's corporate limits." *Id.* at ¶ 17, citing *Moore* at ¶ 30. In reversing the trial court's judgment, the Ninth District explained that the trial court recognized that a municipality has statutory authority to appropriate property outside of its boundaries, but broadly and incorrectly concluded that "none of the enumerated purposes listed in R.C. 719.01 include appropriating property for an alleged taking." *Id.* at ¶ 21-22. The appellate court went on to find that "[a] review of the purposes listed in R.C. 719.01 shows that each one involves a physical, as opposed to a regulatory, taking of property." Ultimately, the Ninth District

concluded that the owner's alleged a redressable claim under R.C. 719.01(J) because the terms used in the statute also encompassed various elements of a storm water management system. *Id.* at ¶ 32-33.

{¶ 32} We agree with Cleveland: *Lillis,* 2017-Ohio-1539, 88 N.E.3d 1267, did not reach the issue of whether *Clifton* and *Moore* apply to physical takings because redressability hinged upon statutory authority. Moreover, our review of *Britt*, 38 Ohio St.2d 1, 309 N.E.2d 412, a case cited by both *Clifton* and *Moore* for the proposition that a municipality has no authority to exercise its inherent eminent-domain powers beyond its corporate limits, reveals that those principles apply regardless of whether the taking is regulatory or physical in nature.

{¶ 33} In *Britt,* a city wanted to extend its sewer lines in order to sell services to persons residing outside of the city. *Id.* at paragraph two of the syllabus. The plaintiffs were property owners outside of the city whose property would be required to be appropriated by that municipality for the construction of a sewer. *Id.* The city relied solely upon a constitutional grant of power to appropriate the property beyond its municipal limits, and R.C. Chapter 719 was not an issue on appeal. *Id.* at 5-6. Therefore, the holding that "no power of eminent domain beyond the geographical limits of a municipality is included in the powers of local self-government granted to municipalities by Section 3, Article [XVIII]" has been applied in the context of physical takings. *Id.* at 8. Accordingly, we conclude, as did the trial court, that Cleveland has no authority under Section 19, Article I, as limited by

Section 3, Article XVIII, of the Ohio Constitution to appropriate the Property, which lies outside of its own corporate limits.

{¶ 34} Therefore, Relators' second assignment of error is overruled.

{¶ 35} Because Relators cannot rely on the Ohio Constitution to establish the redressability of their claim, we must now consider whether Relators have standing to compel Cleveland through a writ of mandamus to appropriate the Property under R.C. 719.02 and 719.01, which statutorily authorize municipalities to appropriate property beyond their limits for certain purposes.

### 2. Statutory Authority

{¶ 36} In the first assignment of error, Relators argue that the trial court erred by granting summary judgment in favor of Cleveland because Cleveland was statutorily authorized to appropriate the Property under R.C. 719.02 and 719.01(O). Relators further claim that the trial court misunderstood the definitions of "airport" and "landing field" because the court should have looked to other sections of the Ohio Revised Code to interpret their meanings.

{¶ 37} "The primary goal of statutory interpretation is to determine and give effect to the intent of the legislature." *Diller v. Diller*, 171 Ohio St.3d 99, 2023-Ohio-1508, 215 N.E.3d 541, ¶ 16, citing *Christe v. GMS Mgmt. Co.*, 88 Ohio St.3d 376, 377, 726 N.E.2d 497 (2000). In order to determine legislative intent, we first look to the plain language of the statute. *Id.* The general rule is that "'[i]f the meaning of the statute is unambiguous and definite, it must be applied as written and no further

interpretation is necessary.'" *Id.*, quoting *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996).

{¶ 38} R.C. 719.02 establishes that a municipal corporation may, when reasonably necessary, acquire property outside of its own limits for any of the purposes enumerated in R.C. 719.01. One of those purposes is the establishment of "airports," "landing fields," or "air navigation facilities":

> Any municipal corporation may appropriate, enter upon, and hold real estate within its corporate limits * * * [f]or establishing airports, landing fields, or other air navigation facilities, either within or without the limits of a municipal corporation for aircraft and transportation terminals, with power to impose restrictions on any part thereof and leasing such part thereof as is desired for purposes associated with or incident to such airports, landing fields, or other air navigation facilities and transportation terminals, including the right to appropriate a right of way for highways, electric, steam, and interurban railroads leading from such airport or landing field to the main highways or the main line of such steam, electric, or interurban railroads, as are desired; all of which are hereby declared to be public purposes.

R.C. 719.01(O). R.C. 719.01 specifically provides that the terms "airport," "landing field," and "air navigation facility" are defined by R.C. 4561.01. That statute provides the definitions for numerous aeronautic terms used from R.C. 4561.01 to 4561.25 only. R.C. 4561.01. According to R.C. 4561.01(C), (D), and (E),

> (C) "Airport" means any location either on land or water which is used for the landing and taking off of aircraft.

> (D) "Landing field" means any location either on land or water of such size and nature as to permit the landing or taking off of aircraft with safety, and used for that purpose but not equipped to provide for the shelter, supply, or care of aircraft.

(E) "Air navigation facility" means any facility used, available for use, or designed for use in aid of navigation of aircraft, including airports, landing fields, facilities for the servicing of aircraft or for the comfort and accommodation of air travelers, and any structures, mechanisms, lights, beacons, marks, communicating systems, or other instrumentalities or devices used or useful as an aid to the safe taking off, navigation, and landing of aircraft, or to the safe and efficient operation or maintenance of an airport or landing field, and any combination of such facilities.

{¶ 39} Relators argue that Cleveland is statutorily authorized to appropriate the Property because the Property is located within the area of the "airport" and "landing field" as included in R.C. 719.01(O) and defined in R.C. 4561.01, et seq. Relators no longer assert that the Property is located within an "air navigation facility" as argued at the trial court. Relators maintain that R.C. 4561.01 does not define the terms "any location" and "on land" within those definitions and claim that "the trial court erred by not inquiring further into what locations on the land are required 'to permit the landing or taking off of aircraft with safety, and used for that purpose[ * * *].'" Relators argue that this court should look to R.C. 4561.31 and 4561.32, and then to R.C. 4563.031 for those answers.

{¶ 40} Whereas, Cleveland argues that alternate statutes beyond R.C. 4561.01 are not necessary to ascertain the meaning of the words within R.C. 719.01(O) and R.C. 4561.31 and 4561.32 do not provide alternative definitions for "airport," "landing field," and "air navigation facility." We find Cleveland's argument more persuasive.

{¶ 41} Relators do not provide any caselaw specifically supporting their argument that R.C. 4561.31, 4561.32, and 4563.031 should be used to expand the

definitions prescribed by R.C. 4561.01, a section of the Ohio Revised Code that provides definitions for terms used through R.C. 4561.25, three of which were borrowed by R.C. 719.01(O). We note that R.C. 4561.31 contemplates the permits required to install or substantially change or maintain structures or objects affecting airport operations; R.C. 4561.32 details the rules, studies, and investigations that the department of transportation must adopt; and R.C. 4563.031 discusses zoning at publicly owned airports. We further note that R.C. 4561.30 and 4563.01 provide their own set of definitions to be used in R.C. 4561.30 through 4561.39 and 4563.01 through 4563.21, including different definitions for the term "airport." Nor has our own research produced any caselaw supporting Relators' claim. Therefore, we decline to use R.C. 4561.31, 4561.32, and 4563.031 to interpret the plain meaning of "airport" and "landing field" as defined in R.C. 4561.01 and adopted by R.C. 719.01(O).

{¶ 42} Next, we determine whether the Property is located within R.C. 719.01(O)'s "airport" or "landing field" as defined by R.C. 4561.01. We note that the definitions of "airport" and "landing field" are specifically limited to "any location either on land or water" and do not contemplate airspace "used for the landing and taking of aircraft" or "of such a size and nature as to permit the landing or taking off of aircraft with safety, and used for that purpose but not equipped to provide for the shelter, supply, or care of the aircraft." R.C. 4561.01(C)-(D). Our review of the record reveals that Relators claim a physical invasion of airspace, and not a physical invasion of "land or water," as required by the plain meaning of R.C.

4561.01. It is well settled that the outer boundaries of the Airport do not cross the outer boundaries of the Property. *Boggs*, 764 Fed.Appx. at 483. This court's review of the record leads this court to same conclusion. Therefore, there is no evidence that the Property's "land or water" is reasonably necessary for the establishment of "airports" and "landing fields" as required by the plain meaning R.C. 719.01(O).

{¶ 43} Accordingly, we find that appropriation of the Property is not within the specific statutory authority conferred by R.C. 719.02, which allows municipalities to acquire property outside of its limits, when reasonably necessary, for the purposes set forth in R.C. 719.01. Therefore, Relators' first assignment of error is overruled.

{¶ 44} Because we find that Relators' claims are not redressable by a writ of mandamus under Section 19, Article I of the Ohio Constitution or R.C. 719.01 and 719.02, we affirm the trial court's ruling that Relators lacked standing to bring the underlying action and find that the granting of Cleveland's motion for summary judgment was proper.

### C. Cross-Assignment of Error

{¶ 45} In the cross-assignment of error, Cleveland argues that either a two- or four-year statute of limitations bars Relators' claims because they were "fully aware of the potential for mandamus relief in 2002" but did not file the underlying action until 2008. Because we overrule Relators' assignments of error and affirm the trial court's judgment, we need not consider the merits of Cleveland's cross-assignment of error.

## III.  Conclusion

{¶ 46} We find that Relators lacked standing to obtain a writ of mandamus against Cleveland to compel it to begin appropriation proceedings of the Property, which is located outside of its municipal corporate limits.  Section 19, Article I, of the Ohio Constitution, as limited by Section 3, Article XVIII, does not provide Cleveland with the power of eminent domain beyond its geographical limits.  Nor is the appropriation of the Property within the statutory authority conferred by R.C. 719.02, which allows municipalities to acquire property outside of its limits, when reasonably necessary, for the specific purposes set forth in R.C. 719.01. Therefore, the trial court correctly ruled that Relators' claim is not redressable by a writ of mandamus and concluded that Relators lacked standing to bring the action. Thus, the trial court properly granted summary judgment in Cleveland's favor.

{¶ 47} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure

_____
MARY J. BOYLE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
LISA B. FORBES, J., CONCUR