**[Cite as *State ex rel. Boggs v. Cleveland*, 2026-Ohio-1450.]**

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

SUSAN BOGGS, STATE EX REL.,
ET AL., :

      Relators-Appellants /
      Cross-Appellees, :

                      No. 112111

v. :

CITY OF CLEVELAND, :

      Respondent-Appellee /
      Cross-Appellant. :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED; REMANDED
**RELEASED AND JOURNALIZED:** April 23, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-08-666718

*Appearances:*

The Lindner Law Firm, LLC, and Daniel F. Lindner, *for appellants / cross-appellees.*

Mark Griffin, Cleveland Director of Law; Elena N. Boop, Chief Trial Counsel; James R. Russell, Jr., Chief Assistant Director of Law; and Gilbert E. Blomgren, Assistant Director of Law, *for appellee / cross-appellant.*

MARY J. BOYLE, J.:

{¶ 1}    This case is before this court on remand from the Ohio Supreme Court in *State ex rel. Boggs v. Cleveland*, 2025-Ohio-5094 ("*Boggs II*"), for further review of our decision in *State ex rel. Boggs v. Cleveland*, 2023-Ohio-3871 (8th Dist.) ("*Boggs I*").  The Ohio Supreme Court has reversed and remanded the matter to this court for consideration of the cross-assignment of error raised by respondent-appellee / cross-appellant, the City of Cleveland ("Cleveland") asserting that the statute of limitations bars relators-appellants / cross-appellees, Susan Boggs ("Boggs"), Fouad Rachid ("Rachid"), and Fouad Inc.'s (collectively, "Boggs") writ of mandamus alleging claims for inverse condemnation.  For the reasons set forth below, we affirm the trial court's finding that Boggs's claims are not barred by the statute of limitations.  Consequently, this case is remanded to the trial court for proceedings consistent with this opinion and *Boggs II*.

## I. Facts and Procedural History

{¶ 2}    The following is a summary of the facts and procedural history:

[Boggs] and [Rachid] live in a home owned by Fouad, Inc. ([collectively, "Boggs"]).  The home is located on the edge of Olmsted Township, near the Cleveland-Hopkins International Airport [airport].  Boggs claims that low overhead flights and other airport operations have interfered with her use and enjoyment of her home to such an extent that it has amounted to a taking of the property. . . . Boggs instituted a mandamus action against the owner of the airport, the City of Cleveland, seeking to compel the institution of appropriation proceedings.

. . .

Fouad, Inc., has owned the Olmsted Township home where Boggs and Rachid live since 1995.  The airport, which is located entirely in

Cleveland, has been in operation since 1925. In 1999, Cleveland began a project to expand two runways. As part of the expansion, the Federal Aviation Administration ("FAA") required Cleveland to fund sound-dampening measures for neighboring properties that would be affected by the expansion, including Boggs's property. *See Boggs v. Cleveland*, FAA-2016-9337, 2017 FAA LEXIS 253, 2017 WL 11438604, *2 (Jan. 24, 2017). And though the FAA did not require Cleveland to purchase any of the properties, *see id.*, Cleveland obtained "avigation easements" (air easements) from various landowners in Olmsted Township. Boggs declined Cleveland's offer to purchase an easement.

According to Boggs, the runway-expansion project caused increased air traffic over her home that interferes with her ability to live in her home. Specifically, she claims that the flights cause noise and vibrations and emit fuel and debris onto her property. Boggs testified that she no longer wants to live there and cannot profit from a sale because the noise and shaking caused by low-flying air traffic have made it unsuitable for residential use.

Boggs instituted the lawsuit that is the subject of this appeal in 2008, after Cleveland began work on expansion of the second runway. She sought relief in mandamus, alleging that Cleveland's operation of the airport constituted a taking under the Fifth Amendment to the United States Constitution and "other applicable laws." Cleveland removed the case to federal court. In federal court, the parties agreed to a dismissal without prejudice and a tolling of the statute of limitations to allow Boggs to pursue administrative remedies with the FAA. The FAA rejected Boggs's claim that Cleveland violated its grant assurances by extending the airport's runways in such a manner as to place Boggs's home within the "landing area" of the airport. *Boggs v. Fed. Aviation Admin.*, 764 Fed.Appx. 480, 483 (6th Cir. 2019). The Sixth Circuit affirmed, concluding that Boggs's property was not part of the landing area because "the statutory definition of landing area describes an area of land and water, not air." *Id.* at 485.

After Boggs was unsuccessful at the FAA, proceedings resumed in federal court in 2019. Ultimately, the district court granted summary judgment in Cleveland's favor on Boggs's federal takings claim. *Boggs v. Cleveland*, 2021 U.S. Dist. LEXIS 101308, 2021 WL 2188794, *1 (N.D.Ohio May 28, 2021). The district court declined to exercise supplemental jurisdiction over Boggs's state-law claims and remanded the case to the common pleas court. *Id.*

Following remand, the state-court proceedings picked up in July 2021. Both parties moved for summary judgment. Boggs argued that the evidence demonstrated that she was entitled to a writ of mandamus compelling Cleveland to initiate appropriation proceedings. Cleveland argued that Boggs lacked standing to pursue the mandamus action, that the claim was barred by the statute of limitations, and that Boggs had failed to establish a taking of her property.

*Boggs II* at ¶ 2, 6-10.

{¶ 3} Although the airport had several expansions and modifications since 1925, at issue in the case was "the expansion of runways labelled 6L-24R ['runway one'] and 6R-24L ['runway two']. Runways [one] and [two] run parallel to each other. They lie on a diagonal in the northeast and southwest direction. The Airport boundary, where the runways terminate, lies across the road from [Rocky River] Reservation." *Boggs I*, 2023-Ohio-3871, ¶ 6. According to *Boggs I*, the parties stipulated, at the trial-court level, to the following timeline regarding the expansion of the runways:

• July 11, 1995: Fouad Inc. acquires the [Boggs's] Property;

• January 2001: Construction begins on new runway [one];

• December 2002: Runway [one] opens at an initial length of 7,000 feet (Stage 1);

• January 2003: Construction restarts on runway [one];

• August 2004: Runway [one] opens at a final length of 9,000 feet (Stage 2);

• May 2007: Construction begins on runway [two] extension;

• August 1, 2008: [Boggs] file the instant action against [Cleveland];

• December 2008: Runway [two] opens at a final length of 9,956 feet[.]

*Boggs I* at ¶ 6.

The trial court granted summary judgment in Cleveland's favor. Cuyahoga C.P. No. CV-08-666718, 2022 WL 21713279, *9 (Nov. 1, 2022). Although the trial court rejected Cleveland's claim that the action was barred by the statute of limitations, it concluded that Boggs had failed to establish standing. *Id.* at *7, 9. The court reasoned that a municipality lacks authority to appropriate property outside its boundaries absent specific statutory authorization. *Id.* at *9. Because it determined that no statute authorized Cleveland to appropriate Boggs's property, the trial court held that Boggs's lawsuit was not redressable by a writ of mandamus. *Id.*

The court of appeals affirmed the trial court's decision that Boggs lacked standing to pursue her mandamus action. [*Boggs I,*] 2023-Ohio-3871, ¶ 46 (8th Dist.). It noted that mandamus is the appropriate remedy to compel a public authority to institute an appropriation action when there has been an involuntary taking of public property. *Id.* at ¶ 22. But it concluded that Boggs did not have standing to pursue such an action against Cleveland. *Id.* at ¶ 23. One element of standing, the court explained, is that a litigant's injury is "likely to be redressed by the requested relief." *Id.*, citing *Moore v. Middletown*, 133 Ohio St. 3d 55, 2012-Ohio-3897, ¶ 22, 975 N.E.2d 977, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). This element, the court concluded, was not met because Cleveland did not have the authority to appropriate Boggs's property. *Id.* at ¶ 33, 43.

In reaching this conclusion, the court first rejected the notion that Boggs had standing by virtue of the guarantee of "compensation" when private property is taken for public use in Article I, Section 19 of the Ohio Constitution. *Id.* at ¶ 26. It opined that Article I, Section 19 was "limited by" Ohio's home-rule provision, Article XVIII, Section 3 of the Ohio Constitution. *Id.* at ¶ 27. Under the home-rule provision, the court explained, a municipality has no authority to take property outside its city limits aside from acquiring property for a public utility to serve its own residents. *Id.* And the court concluded that because a municipality lacks constitutional authority to appropriate property beyond its boundaries, a property owner cannot pursue a mandamus claim to force a city to commence appropriation proceedings for the purpose of providing compensation for a taking that has occurred. *Id.* at ¶ 28, 35. It premised this conclusion on two opinions, *Clifton v. Blanchester*, 2012-Ohio-780, 131 Ohio St. 3d 287, 964 N.E.2d 414, and *Moore*, in which this court held that a property owner lacked standing

to pursue a mandamus action for a regulatory-takings claim against a foreign municipality. *See id.* at ¶ 28.

The court of appeals also considered whether any statute authorized Cleveland to appropriate Boggs's property. It noted that R.C. 719.01 authorized a municipality to appropriate property for purposes of establishing "airports" and "landing fields." *Id.* at ¶ 38. But it determined that Boggs' property did not fall within the statutory definitions of these terms set forth in R.C. 4561.01. *Id.* at ¶ 42, citing R.C. 4561.01. It explained that "the definitions of 'airport' and 'landing field' are specifically limited to 'any location either on land or water'" and therefore did not authorize Cleveland to take property beyond the physical boundaries of the airport. *Id.*, quoting R.C. 4561.01(C) and (D). Thus, because neither the Ohio Constitution nor any statute authorized Cleveland to appropriate Boggs's property, the court of appeals held that Boggs lacked standing to pursue a mandamus action. *Id.* at ¶ 44.

In the court of appeals, Cleveland also sought to defend the trial court's judgment on the alternative basis that Boggs's claim was barred by the statute of limitations. *See* App. R. 3(C)(2) (allowing an appellee "to defend an order appealed by an appellant on a ground other than that relied on by the trial court"). But because the court of appeals determined that Boggs lacked standing, it did not reach the statute-of-limitations issue. [*Boggs I*,] 2023-Ohio-3871 at ¶ 45 (8th Dist.).

*Boggs II* at ¶ 11-15.

{¶ 4} The Supreme Court accepted Boggs's appeal on two propositions of law. In the first proposition of law, Boggs argued that she had standing because R.C. 719.01 allows a municipality to acquire property outside its jurisdiction for the purpose of constructing an airport. In the second, Boggs challenged this court's conclusion that Article I, Section 19 is an insufficient basis for standing, arguing that *Clifton* and *Moore* should not be read to bar a physical-takings claim against a foreign municipality.

**{¶ 5}** The Ohio Supreme Court agreed with Boggs and declined to "extend *Clifton* and *Moore* beyond their 'unique facts.'" *Boggs II* at ¶ 52. In addition, the Court held that "a person who alleges that his property has been taken by a foreign municipality may pursue a mandamus action to force the municipality to institute appropriation proceedings for purposes of compensating the landowner for property that has been taken." *Id.* In other words, the Court held that Boggs has standing to pursue her mandamus claim. *Id.* Accordingly, the Ohio Supreme Court reversed this court's decision in *Boggs I* and remanded the matter for this court to consider Cleveland's statute-of-limitations argument, which states:

> **Cross-Assignment of Error:** The trial court's judgment in favor of [Cleveland] should be affirmed because the applicable statute of limitation bars the remaining claim against it.

## II. Law and Analysis

**{¶ 6}** In the cross-appeal, Cleveland asserts that the trial court erred when it held that Boggs's claims are not barred by the four-year statute of limitations. We find no merit to Cleveland's argument.

**{¶ 7}** An appellate court reviews the grant or denial of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). In a de novo review, the appellate court affords no deference to the trial court's decision and independently reviews the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 2009-Ohio-2136, ¶ 12 (8th Dist.); *Smathers v. Glass*, 2022-Ohio-4595, ¶ 30. Summary judgment is appropriate if (1) no genuine issue of any material fact remains; (2) the moving party is entitled to judgment as a

matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Grafton* at 105.

{¶ 8} The party moving for summary judgment bears the burden of demonstrating that no genuine issues of material fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). The moving party has the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Id*. "To accomplish this, the movant must be able to point to the evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment." *Id*. These include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any." Civ.R. 56(C). "These evidentiary materials must show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Dresher* at 293.

{¶ 9} After the moving party has satisfied this initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that there is a genuine issue of material fact. *Id*. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Am. Dental Ctr. v. Wunderle*, 1993 Ohio

App. LEXIS 4437, *4 (8th Dist. Sept. 16, 1993), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). This court has explained:

> "[T]he plain language of the summary judgment rule mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of a non-moving party's case necessarily renders all other facts immaterial."

(Citations omitted.) *Corradi v. Soclof*, 1995 Ohio App. LEXIS 2162, *6 (8th Dist. May 25, 1995), quoting *Toensing v. MK-Ferguson Co.*, 76 Ohio App.3d 826, 830 (8th Dist. 1992), citing *Celotex Corp.* at 323-324.

{¶ 10} Thus, we independently review Cleveland's motion for summary judgment to determine whether Boggs's writ of mandamus action filed on August 1, 2008, is barred by the statute of limitations.

{¶ 11} Initially we note that the parties agree that a four-year statute of limitations as set forth in R.C. 2305.09(E) applies, which establishes that an action for relief on "the grounds of a physical or regulatory taking of real property" must be brought within four years after the cause of action accrues. In *State ex rel. Nickoli v. Erie MetroParks*, 2010-Ohio-920, and reaffirmed in *State ex rel. Doner v. Zody,* 2011-Ohio-6117, ¶ 34, the Ohio Supreme Court held that a "'cause of action against the government has "first accrued" only when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence.'" *Nickoli* at ¶ 34, quoting *Hopland Band of Pomo*

*Indians v. United States,* 855 F.2d 1573, 1577 (Fed.Cir. 1988). Likewise, this court has held that "[a] cause of action for injury to real property and relief on the grounds of a physical or regulatory taking accrues, and the four-year statute of limitation commences to run, when the injury or taking is first discovered, or through the exercise of reasonable diligence, should have been discovered." *State ex rel. Stamper v. Richmond Hts.*, 2010-Ohio-3884, ¶ 25 (8th Dist.). This applies to actions, such as this one, for mandamus relief to begin appropriation proceedings. *Zody* at paragraph four of the syllabus (Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings when an involuntary taking of private property is alleged.). Therefore, the question before this court is when did the cause of action accrue.

{¶ 12} Cleveland asserts that the trial court erred in its application of the four-year statute of limitations because Boggs's claims accrued at the latest in 2002. Cleveland maintains that Boggs was aware of the potential for mandamus relief as early January 2001, when Boggs was notified of the proposed expansion of the runways, or at the latest August 7, 2002, when Boggs made a formal demand that Cleveland purchase the property. Cleveland claims that this is when the injury or taking was first discovered or through reasonable diligence, should have been discovered. Because the cause of action was filed on August 1, 2008, Cleveland argues that it is time-barred.

{¶ 13} Whereas Boggs asserts that the suit was timely filed because it was filed within four years of the completion of runway one in August 2004. Boggs

argues that runway one was enlarged to a length of 7,000 feet in 2002 and then expanded again in 2004 to a total of 9,000 feet, which is 2,000 feet closer to Boggs's property. Boggs argues that any petition arguing the effects of the 2004 expansion of runway one would not have been ripe until its completion in August 2004.

{¶ 14} After careful review of the record, we are not persuaded by Cleveland's argument that the mandamus action accrued at the latest in 2002, because it is undisputed that the expansion of runway one was not completed until August 2004. We find that the completion of runway one is when all the events that fix the government's alleged liability occurred. Therefore, the filing of Boggs's writ of mandamus on August 1, 2008, was within the four-year-statute of limitations.

{¶ 15} In light of the foregoing, we find that the trial court did not err by holding that Boggs's claims are not barred by the statute of limitations.

{¶ 16} Accordingly, Cleveland's cross-assignment of error is overruled.

{¶ 17} Judgment affirmed; cause remanded. This case is remanded to the trial court for proceedings consistent with this opinion and *Boggs II*. We note that "[t]o be successful, Boggs will need to show that Cleveland's actions amounted to a cognizable taking of her property." *Boggs II* at ¶ 55.

It is ordered that appellants / cross-appellees recover from appellee / cross-appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

MICHELLE J. SHEEHAN, A.J., and
LISA B. FORBES, J., CONCUR