[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Boggs v. Cleveland*, Slip Opinion No. 2025-Ohio-5094.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5094

STATE EX REL. BOGGS ET AL., APPELLANTS, *v.* THE CITY OF CLEVELAND, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Boggs v. Cleveland*, Slip Opinion No. 2025-Ohio-5094.]**

*Mandamus—Appropriation proceedings—Under Article I, Section 19 of Ohio Constitution, when private property is taken for a public use, the government must pay just compensation regardless of whether taking was appropriate—A landowner who alleges that his or her private property has been taken by a foreign municipality has standing to pursue a mandamus action to force the municipality to institute appropriation proceedings for purposes of compensating the landowner for property that has been taken— Court of appeals' judgment reversed and cause remanded.*

(No. 2023-1557—Submitted February 11, 2025—Decided November 13, 2025.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 112111, 2023-Ohio-3871.

———————————

DEWINE, J., authored the opinion of the court, which KENNEDY, C.J., and BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ., joined. FISCHER, J., concurred in judgment only.

**DEWINE, J.**

{¶ 1} The Ohio Constitution provides that when private property is taken for a public use, "compensation shall be made to the owner." Ohio Const., art. I, § 19. This case concerns the application of that provision.

{¶ 2} Susan Boggs and Fouad Rachid live in a home owned by Fouad, Inc. (We refer to the three parties collectively as "Boggs.") The home is located on the edge of Olmsted Township, near the Cleveland-Hopkins International Airport. Boggs claims that low overhead flights and other airport operations have interfered with her use and enjoyment of her home to such an extent that it has amounted to a taking of the property. When the government takes private property but has failed to institute formal condemnation proceedings, a property owner may assert a claim for inverse condemnation to recover the value of the property that has been taken. We have held that the way to assert such a claim is to file a claim in mandamus to require the government to commence appropriation proceedings for the purpose of determining the amount of compensation that is owed. *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.*, 2001-Ohio-1276, ¶ 21. So Boggs instituted a mandamus action against the owner of the airport, the City of Cleveland, seeking to compel the institution of appropriation proceedings.

{¶ 3} The trial court, however, never reached the merits of the claim. Instead, it dismissed the case for lack of standing. The problem, in the trial court's view, was that the home was not located in Cleveland. The court reasoned that a municipality has no authority to take property outside its boundaries, and therefore Cleveland could not be compelled to initiate appropriation proceedings to provide

compensation for Boggs's Olmsted Township property. Because standing depends, in part, on whether a claim is redressable, the court concluded that there was no standing. The Eighth District Court of Appeals affirmed, and the dispute about standing is now in front of us.

{¶ 4} We reverse the judgment of the court of appeals. The command of the Ohio Constitution that the government "shall" pay compensation when it takes private property is unequivocal. It applies regardless of whether the property being taken is located in the jurisdiction doing the taking. The fact that Boggs's property isn't located in Cleveland doesn't mean that Cleveland doesn't have to pay compensation if it took Boggs's property. Thus, we conclude that the courts below erred in determining that Boggs lacked standing to pursue an inverse-condemnation claim.

{¶ 5} Our holding today is simply that Boggs has standing to present her claim in court. Whether she will be ultimately successful in establishing an unconstitutional taking remains to be determined.

## I. BACKGROUND

{¶ 6} Fouad, Inc., has owned the Olmsted Township home where Boggs and Rachid live since 1995. The airport, which is located entirely in Cleveland, has been in operation since 1925. In 1999, Cleveland began a project to expand two runways. As part of the expansion, the Federal Aviation Administration ("FAA") required Cleveland to fund sound-dampening measures for neighboring properties that would be affected by the expansion, including Boggs's property. *See Boggs v. Cleveland*, FAA-2016-9557, 2017 WL 11438604, *2 (Jan. 24, 2017). And though the FAA did not require Cleveland to purchase any of the properties, *see id.*, Cleveland obtained "avigation easements" (air easements) from various landowners in Olmsted Township. Boggs declined Cleveland's offer to purchase an easement.

**{¶ 7}** According to Boggs, the runway-expansion project caused increased air traffic over her home that interferes with her ability to live in her home. Specifically, she claims that the flights cause noise and vibrations and emit fuel and debris onto her property. Boggs testified that she no longer wants to live there and cannot profit from a sale because the noise and shaking caused by low-flying air traffic have made it unsuitable for residential use.

**{¶ 8}** Boggs instituted the lawsuit that is the subject of this appeal in 2008, after Cleveland began work on expansion of the second runway. She sought relief in mandamus, alleging that Cleveland's operation of the airport constituted a taking under the Fifth Amendment to the United States Constitution and "other applicable laws." Cleveland removed the case to federal court. In federal court, the parties agreed to a dismissal without prejudice and a tolling of the statute of limitations to allow Boggs to pursue administrative remedies with the FAA. The FAA rejected Boggs's claim that Cleveland violated its grant assurances by extending the airport's runways in such a manner as to place Boggs's home within the "landing area" of the airport. *Boggs v. Fed. Aviation Administration*, 764 Fed.Appx. 480, 483 (6th Cir. 2019). The Sixth Circuit affirmed, concluding that Boggs's property was not part of the landing area because "the statutory definition of landing area describes an area of land and water, not air." *Id.* at 485.

**{¶ 9}** After Boggs was unsuccessful at the FAA, proceedings resumed in federal court in 2019. Ultimately, the district court granted summary judgment in Cleveland's favor on Boggs's federal takings claim. *Boggs v. Cleveland*, 2021 WL 2188794, *1 (N.D.Ohio May 28, 2021). The district court declined to exercise supplemental jurisdiction over Boggs's state-law claims and remanded the case to the common pleas court. *Id.*

**{¶ 10}** Following remand, the state-court proceedings picked up in July 2021. Both parties moved for summary judgment. Boggs argued that the evidence demonstrated that she was entitled to a writ of mandamus compelling Cleveland to

initiate appropriation proceedings. Cleveland argued that Boggs lacked standing to pursue the mandamus action, that the claim was barred by the statute of limitations, and that Boggs had failed to establish a taking of her property.

{¶ 11} The trial court granted summary judgment in Cleveland's favor. Cuyahoga C.P. No. CV-08-666718, 2022 WL 21713279, *9 (Nov. 1, 2022). Although the trial court rejected Cleveland's claim that the action was barred by the statute of limitations, it concluded that Boggs had failed to establish standing. *Id.* at *7, 9. The court reasoned that a municipality lacks authority to appropriate property outside its boundaries absent specific statutory authorization. *Id.* at *9. Because it determined that no statute authorized Cleveland to appropriate Boggs's property, the trial court held that Boggs's lawsuit was not redressable by a writ of mandamus. *Id.*

{¶ 12} The court of appeals affirmed the trial court's decision that Boggs lacked standing to pursue her mandamus action. 2023-Ohio-3871, ¶ 46 (8th Dist.). It noted that mandamus is the appropriate remedy to compel a public authority to institute an appropriation action when there has been an involuntary taking of public property. *Id.* at ¶ 22. But it concluded that Boggs did not have standing to pursue such an action against Cleveland. *Id.* at ¶ 23. One element of standing, the court explained, is that a litigant's injury is "likely to be redressed by the requested relief." *Id.*, citing *Moore v. Middletown*, 2012-Ohio-3897, ¶ 22, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). This element, the court concluded, was not met because Cleveland did not have the authority to appropriate Boggs's property. *Id.* at ¶ 33, 43.

{¶ 13} In reaching this conclusion, the court first rejected the notion that Boggs had standing by virtue of the guarantee of "compensation" when private property is taken for public use in Article I, Section 19 of the Ohio Constitution. *Id.* at ¶ 26. It opined that Article I, Section 19 was "limited by" Ohio's home-rule provision, Article XVIII, Section 3 of the Ohio Constitution. *Id.* at ¶ 27. Under the

home-rule provision, the court explained, a municipality has no authority to take property outside its city limits aside from acquiring property for a public utility to serve its own residents. *Id.* And the court concluded that because a municipality lacks constitutional authority to appropriate property beyond its boundaries, a property owner cannot pursue a mandamus claim to force a city to commence appropriation proceedings for the purpose of providing compensation for a taking that has occurred. *Id.* at ¶ 28, 35. It premised this conclusion on two opinions, *Clifton v. Blanchester*, 2012-Ohio-780, and *Moore*, in which this court held that a property owner lacked standing to pursue a mandamus action for a regulatory-takings claim against a foreign municipality. *See id.* at ¶ 28.

{¶ 14} The court of appeals also considered whether any statute authorized Cleveland to appropriate Boggs's property. It noted that R.C. 719.01 authorized a municipality to appropriate property for purposes of establishing "airports" and "landing fields." *Id.* at ¶ 38. But it determined that Boggs' property did not fall within the statutory definitions of these terms set forth in R.C. 4561.01. *Id.* at ¶ 42, citing R.C. 4561.01. It explained that "the definitions of 'airport' and 'landing field' are specifically limited to 'any location either on land or water' " and therefore did not authorize Cleveland to take property beyond the physical boundaries of the airport. *Id.*, quoting R.C. 4561.01(C) and (D). Thus, because neither the Ohio Constitution nor any statute authorized Cleveland to appropriate Boggs's property, the court of appeals held that Boggs lacked standing to pursue a mandamus action. *Id.* at ¶ 44.

{¶ 15} In the court of appeals, Cleveland also sought to defend the trial court's judgment on the alternative basis that Boggs's claim was barred by the statute of limitations. *See* App. R. 3(C)(2) (allowing an appellee "to defend an order appealed by an appellant on a ground other than that relied on by the trial court"). But because the court of appeals determined that Boggs lacked standing, it did not reach the statute-of-limitations issue. 2023-Ohio-3871 at ¶ 45 (8th Dist.).

{¶ 16} We accepted Boggs's appeal on two propositions of law. *See* 2024-Ohio-555. In the first, Boggs maintains that she has standing because R.C. 719.01 allows a municipality to acquire property outside its jurisdiction for the purpose of constructing an airport. In the second, Boggs challenges the court of appeals' conclusion that Article I, Section 19 is an insufficient basis for standing, arguing that *Clifton* and *Moore* should not be read to bar a physical-takings claim against a foreign municipality.

## II. ANALYSIS

{¶ 17} To establish standing, a plaintiff must show that she suffered (1) an injury that is (2) fairly traceable to the defendant's alleged unlawful conduct, and (3) is likely to be redressed by the requested relief. *Lujan*, 504 U.S. at 560-561; *State ex rel. Martens v. Findlay Mun. Court*, 2024-Ohio-5667, ¶ 12. The only issue in this case is the third element—redressability.

{¶ 18} At the heart of the redressability inquiry in this case is a threshold question: Is a property owner entitled to compensation when a municipal government has taken her property even if she doesn't live in the municipality that has done the taking? As the court of appeals saw it, the answer is no unless there is a specific statutory grant of authority that allows the municipality to appropriate the property outside its jurisdiction.

{¶ 19} The decision below was grounded in this court's precedent. But it leaves Boggs—and others in her situation—in a conundrum. On the one hand, the Ohio Constitution guarantees compensation to a property owner who has had land taken for a public use. And there is nothing in the constitutional guarantee that limits this right when the property is taken by a different municipality than the one in which the property is located. But when the property owner doesn't live in the municipality that takes the property, under the logic of the court of appeals, there are no means available for that property owner to secure the just compensation guaranteed by the Ohio Constitution.

{¶ 20} In other words, the court of appeals put the following four principles of law together and came out at a dead end: (1) the Ohio Constitution guarantees a right to just compensation when private property is taken for a public use, (2) the way to secure that compensation is by instituting a mandamus action to force a municipality to institute appropriation proceedings, (3) but a municipality cannot institute proceedings to appropriate property outside its boundaries, (4) so when a municipality does take property outside its boundaries, there is no way for a landowner to secure just compensation.

{¶ 21} To decide whether Ohio law really imposes such a surprising result, we begin with a closer look at the constitutional framework governing eminent-domain proceedings and municipal authority.

## A. Constitutional Framework

{¶ 22} Central to this case is the interplay of two provisions of the Ohio Constitution: Article I, Section 19 (the Takings Clause) and Article XVIII, Section 3 (the Home Rule Amendment).

### 1. The Takings Clause of the Ohio Constitution

{¶ 23} The Ohio Constitution has always included a takings clause. Article VIII, Section 4 of the 1802 Constitution stated, "Private property ought and shall ever be held inviolate, but always subservient to the public welfare, provided a compensation in money be made to the owner." This principle remains today. Article I, Section 19 of Ohio's current Constitution, adopted in 1851, requires the government to pay just compensation when it takes private property for public use. The full text of the provision provides:

> Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the

public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money, and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.

Ohio Const., art. I, § 19.

{¶ 24} We have explained, "Any direct encroachment upon land that subjects it to a public use that excludes or restricts the dominion and control of the owner over it is a taking of property, for which the owner is guaranteed a right of compensation under Section 19, Article I of the Ohio Constitution." *State ex rel. Doner v. Zody*, 2011-Ohio-6117, paragraph four of the syllabus. And "'where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective.'" *State ex rel. Shemo v. Mayfield Hts.*, 2002-Ohio-1627, ¶ 35, quoting *First English Evangelical Lutheran Church of Glendale v. Cty. of Los Angeles*, 482 U.S. 304, 321 (1987).

{¶ 25} We have never directly addressed whether the compensation requirement of Article I, Section 19 is self-executing. But it easily falls within our understanding of a self-executing provision. A constitutional provision is self-executing "if the nature and extent of the right conferred and the liability imposed are fixed by the constitution itself, so that they can be determined by an examination and construction of its terms, and there is no language indicating that the subject is referred to the legislature for action." *State ex rel. Russell v. Bliss*, 156 Ohio St. 147, 152 (1951); *see also In re Protest*, 49 Ohio St.3d 102, 104 (1990) ("A clause in a constitution is self-executing if it contains more than a mere framework, and specifically provides for carrying into immediate effect the enjoyment of the rights

established therein without legislative action."). By this standard, Article I, Section 19 is plainly self-executing: the provision requires compensation when property is taken for public use, it outlines a specific procedural method (a jury trial) by which compensation is to be ascertained, and it contains no language indicating that its enforcement depends on legislative action. *See also Knick v. Scott, Pennsylvania*, 588 U.S. 180, 192 (2019) ("Because of 'the self-executing character' of the Takings Clause [of the federal Constitution] 'with respect to compensation,' a property owner has a constitutional claim for just compensation at the time of the taking." [Cleaned up.]).

{¶ 26} Indeed, as our earliest caselaw illustrates, we have always provided a remedy to allow property owners to secure just compensation when they have had their property taken by the government. In *Cooper v. Williams*, 4 Ohio 253 (1831), private property owners had their water diverted for a canal project. This court explained that the owners were "entitled to a compensation for every injury resulting from [the taking]." *Id.* at 287; *see also Symonds v. Cincinnati*, 14 Ohio 147, 173 (1846) ("The obligation to make compensation . . . follows [the government's right to exercise eminent-domain power], as the shadow does the substance, and is concomitant with it."); *Giesy v. Cincinnati, Wilmington & Zanesville RR. Co.*, 4 Ohio St. 308, 324 (1854) ("no enlightened government, at this day, attempts to appropriate without compensation, and, in this country, it is everywhere enforced by constitutional provisions"); *Kramer v. Cleveland & Pittsburgh RR. Co.*, 5 Ohio St. 140, 146-147 (1855) ("Full compensation must be made to the owner . . . . A fair and equitable mode for ascertaining the amount of this compensation, and an undoubted fund from which to pay it, must in all cases be provided, as a necessary part of the proceeding to appropriate."). And throughout the 19th century, this court held that a property owner who alleges an unconstitutional taking has a statutory remedy in probate court. *See, e.g.*, *Toledo v. Preston*, 50 Ohio St. 361, 365-366 (1893).

{¶ 27} Today, there is a statutory procedure that applies to determine the amount of compensation owed when the government has formally instituted eminent-domain proceedings. Chapter 163 of the Revised Code requires the government to institute condemnation proceedings when it seeks to acquire property for a public use, R.C. 163.63, and establishes procedures for the exercise of that power.

{¶ 28} But, of course, sometimes government actions have the effect of taking private property even when the government has not commenced formal condemnation proceedings. Not all takings protected by the Constitution result from the institution of formal eminent-domain proceedings. Takings can occur when government actions lead to persistent flooding, *e.g.*, *Doner*, 2011-Ohio-6117, when highway improvements deprive an owner of access to his property, *e.g.*, *State ex rel. New Wen, Inc. v. Marchbanks*, 2020-Ohio-63, when a neglected sewage pump repeatedly overflows into a creek on an owner's property, *e.g.*, *State ex rel. Gilbert v. Cincinnati*, 2010-Ohio-1473, or, as may be relevant here, "whenever airflights are so low and so frequent as to be a direct and immediate interference with enjoyment and use of the land," *State ex rel. Royal v. Columbus*, 3 Ohio St.2d 154, paragraph one of the syllabus.

{¶ 29} This court has developed a remedy in such situations. When the government has taken property without providing just compensation, a property owner may institute a mandamus action for inverse condemnation. *Elsass*, 2001-Ohio-1276, at ¶ 21; *Doner* at ¶ 53. We have described such an action as "'a cause of action against the government to recover the value of property taken by the government without formal exercise of the power of eminent domain.'" *Doner* at ¶ 62, quoting *Moden v. United States*, 404 F.3d 1335, 1342 (Fed.Cir. 2005).

{¶ 30} In an inverse-condemnation proceeding, the court in the mandamus action "acts as the trier of fact and law" and determines "whether the private property ha[s] been taken by the public authority." *State ex rel. BSW Dev. Group v.*

*Dayton*, 1998-Ohio-287, ¶ 15.  If the court determines that there has been a taking, it grants a writ of mandamus compelling the commencement of appropriation proceedings.  *Shemo*, 2002-Ohio-1627, at ¶ 21, 50.  The purpose of the appropriation proceedings is to determine the amount of compensation due.  *Doner* at ¶ 86.  The court presiding over the appropriation proceedings determines "the extent of the taking."  *Id*.  The amount of compensation is determined by a jury.  Ohio Const., art. I, § 19; *Akron-Selle Co. v. Akron*, 49 Ohio App.2d 128, 130 (9th Dist. 1974).

### 2.  *The Municipal Eminent-Domain Power*

{¶ 31} Despite our authority holding that when the government has taken private property without instituting eminent-domain proceedings a property owner may obtain relief through a mandamus action, the court of appeals in this case determined that that remedy was not available because Cleveland had no authority to take property located outside the city, 2023-Ohio-3871 at ¶ 46 (8th Dist.).  So we turn now to a municipality's power to acquire property through eminent-domain proceedings.

{¶ 32} Under the home-rule provision of the Ohio Constitution, a municipality has the "authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."  Ohio Const., art. XVIII, § 3.  We have held that "'[a]ll powers of . . . self-government' as set forth in Section 3 of Article XVIII of the Ohio Constitution include the power of eminent domain." (Ellipsis in original.)  *State ex rel. Bruestle v. Rich*, 159 Ohio St. 13 (1953), paragraph seven of the syllabus, quoting Ohio Const., art. XVIII, § 3.  But these powers "do not include the power of eminent domain beyond the geographical limits of the municipality."  *Britt v. Columbus*, 38 Ohio St.2d 1 (1974), paragraph one of the syllabus.

{¶ 33} This court has also concluded that another constitutional provision, Article XVIII, Section 4, allows a municipality to appropriate property both "within or without" its corporate limits to establish a public utility that serves its own residents. *Britt* at 8.

{¶ 34} In addition to the constitutional provisions, the General Assembly has granted municipalities statutory authority to exercise eminent-domain powers beyond their borders "when reasonably necessary," R.C. 719.02, but only for certain enumerated public purposes, R.C. 719.01. Among the permissible purposes is "for establishing airports, landing fields, or other air navigation facilities." R.C. 719.01(O). Boggs argues that Cleveland took her property for purposes of establishing an "airport" or "landing field." Those terms are defined by R.C. 4561.01, which provides:

> . . .
>
> (C) "Airport" means any location either on land or water which is used for the landing and taking off of aircraft.
>
> (D) "Landing field" means any location either on land or water of such size and nature as to permit the landing or taking off of aircraft with safety, and used for that purpose but not equipped to provide for the shelter, supply, or care of aircraft.

{¶ 35} As the court of appeals correctly found, R.C. 719.01(O) is inapplicable here because Boggs's property is not located within the "airport" or "landing field" as defined by R.C. 4561.01(C) and (D). *See* 2023-Ohio-3871 at ¶ 42 (8th Dist.). R.C. 719.01(O) permits appropriation of land or water only for purposes of establishing an airport or landing field, but Boggs alleges a physical invasion of airspace by an already established airport. Here, the statute unambiguously refers to "land or water," not airspace. And, as explained by the

court of appeals, "[i]t is well settled that the outer boundaries of the Airport do not cross the outer boundaries of the Property." 2023-Ohio-3871 at ¶ 42 (8th Dist.). Because the statute does not permit the taking of airspace beyond the boundaries of an airport or landing field, "appropriation of the Property is not within the specific statutory authority conferred by R.C. 719.02," *id.* at ¶ 43, and Boggs's claims are not redressable under that statute, *see id*. at ¶ 44.

### 3. *The Takings Clause Meets the Home-Rule Limit on Municipal Authority*

{¶ 36} So far we have outlined two constitutional principles: (1) if property is taken for a public use, the government must pay just compensation, and (2) municipalities do not have the authority to exercise eminent domain outside their boundaries. Now, we consider what happens when those principles run up against each other. What happens when a municipal government takes property beyond its boundaries and fails to pay just compensation? Two cases from this court provide a starting point for our analysis.

{¶ 37} In *Clifton*, 2012-Ohio-780, a property owner alleged that the Village of Blanchester had made a partial regulatory taking of his property by rezoning a neighbor's property. The complaining party's property was not located in Blanchester, but the rezoned property was. A majority of this court held that the property owner lacked standing to pursue a mandamus claim to compel Blanchester to commence an appropriation action. *Id.* at ¶ 30. There were two rationales provided for the decision. First, the majority held that the property owner could not satisfy the "causation" element of standing because there was an insufficient nexus between the rezoning and the alleged diminution in value of the property owner's property. *Id*. at ¶ 31. It reasoned that the zoning imposed no limitation on the landowner's use of his property and that any reduced value was a result not of the rezoning but of the neighbor's use of the property. *Id*.

{¶ 38} The majority could have stopped there, but it went on to opine that the landowner also had failed to establish the redressability element of standing.

*Id*. at ¶ 29.  The majority's reasoning was sparse, stating simply that because a municipality generally lacks the authority to exercise eminent domain beyond its boundaries, "a municipality has no authority to initiate appropriation proceedings in response to a property owner's complaint in mandamus alleging a regulatory-takings claim if the affected property lies outside the municipality's limits," *id*.  Thus, the majority held that "a property owner has no redressable regulatory-takings claim against a municipality when the affected property lies outside the municipality's corporate limits."  *Id*.  The majority cautioned, however, that its holding was limited: "[W]e emphasize that we do not hold that an adjoining property owner may never have standing.  Instead, we hold that a property owner lacks standing under the facts and circumstances presented here."  *Id*. at ¶ 30.

{¶ 39} Justice Pfeiffer dissented.  In his view, "even though Blanchester cannot appropriate [the nonresident's] property, it can compensate him as if it had appropriated his property, and therefore [the nonresident property owner] raises an issue that is redressable."  *Id*. at ¶ 44 (Pfeiffer, J., dissenting).

{¶ 40} Six months after it decided *Clifton*, this court decided *Moore*, 2012-Ohio-3897.  In *Moore*, the City of Middletown had rezoned property to allow for the construction of a large-scale industrial coke-production facility.  (That's coke as it is used in steel manufacturing, not the soda pop.)  Owners of adjacent property located in Monroe sued, claiming that the rezoning decreased the value of their properties, was arbitrary and capricious, and violated their due-process and equal-protection rights.  *Id.* at ¶ 5, 9-10.  They asserted claims for a declaratory judgment and for a writ of mandamus to compel appropriation proceedings.  *Id.* at ¶ 10.

{¶ 41} Based on the holding in *Clifton,* the *Moore* court held that the nonresident property owners lacked standing to pursue their mandamus actions.  *Id.* at ¶ 29.  At the same time, the court reminded that it had "expressly cautioned in *Clifton* that the decision should not be construed too broadly beyond the facts and posture of that case."  *Id*.  It explained:

> Despite the breadth of wording in *Clifton*'s syllabus, we make clear that that decision does not stand for the proposition that a property owner always lacks standing to bring a mandamus claim against a municipality when the affected property is outside the municipality's corporate limits.  Rather, *Clifton* must be understood in conjunction with the unique facts and circumstances upon which it rests, . . . including the fact that it was a mandamus claim against a foreign municipality by a property owner who attempted to challenge the rezoning of contiguous land from one industrial use to another.

*Id*. at ¶ 30.  The *Moore* court further held that even though the nonresident property owners lacked standing to pursue a mandamus action, they could challenge the constitutionality of the rezoning by way of a declaratory-judgment action.  *Id*. at ¶ 56.

### B.  Boggs Has Standing to Pursue a Mandamus Action to Obtain Just Compensation for a Government Taking

{¶ 42} With that background behind us, we turn now to the proper resolution of this case.  And the resolution is straightforward.  Article I, Section 19 of the Ohio Constitution makes an unequivocal command: When private property is taken for public use, "compensation shall be made to the owner."  We have long held that this right can be protected through a mandamus action.  In such a mandamus action, the mandamus court determines whether a taking has in fact occurred.  And if it has occurred, the government that has taken the property is required to institute appropriation proceedings at which a jury determines the amount necessary to compensate the property owner for what has already been taken.

{¶ 43} Here, however, the court of appeals determined that because a municipality has no inherent authority to exercise its eminent-domain powers beyond its corporate limits, Boggs lacked standing to seek a writ of mandamus compelling Cleveland to institute appropriation proceedings. 2023-Ohio-3871 at ¶ 46 (8th Dist.). In other words, the court held that because Cleveland didn't have the authority to take Boggs's property in an eminent-domain proceeding, it couldn't be forced to pay for Boggs's property even if it had already taken it.

{¶ 44} We disagree. The principle that a municipality cannot use the power of eminent domain beyond its borders should not mean that a municipality does not have to follow the Constitution's command to pay just "compensation" when its actions effect an extraterritorial taking of property.

{¶ 45} Article I, Section 19 operates on the government in two ways. First, it provides an implicit grant of authority: the government may take private property, but that implicit grant is expressly limited—only for a "public use." Second, it places a duty on the government: When the government takes private property, it must pay "compensation." The grant of authority is distinct from the duty imposed. Regardless of whether it was appropriate for the government to take a citizen's property, the government still must pay him compensation when it has done so. The mistake that the court of appeals made—and that we made in *Clifton* and *Moore*—was conflating these two principles. The government's duty to pay compensation is independent of its authority to use its power of eminent domain.

{¶ 46} It is true that under our long-standing interpretation of the home-rule power, a municipality generally lacks authority to institute eminent-domain proceedings to appropriate property outside its boundaries. But that doesn't mean that a municipality is relieved of its duty to pay compensation under Article I, Section 19 if it does in fact take private property outside its borders. Our caselaw demonstrates that government actions sometimes have the effect of taking private property in circumstances in which it has not formally exercised the power of

17

eminent domain. Indeed, by definition, an inverse-condemnation action—such as the one presented here—is "'a cause of action against the government to recover the value of property taken by the government without formal exercise of the power of eminent domain,'" *Doner*, 2011-Ohio-6117, at ¶ 62, quoting *Moden*, 404 F.3d at 1342.

{¶ 47} The Ohio Constitution guarantees a remedy in such situations. And we have long held that once a property owner establishes in a mandamus action that a taking has occurred, the amount of compensation owed is to be determined through the procedures set forth in Chapter 163 of the Revised Code.

{¶ 48} It is of course true that a municipality could not ordinarily institute eminent-domain proceedings under R.C. Ch. 163 to acquire property outside its boundaries. But that does not preclude the use of R.C. Ch. 163's procedures to ascertain the amount of compensation due when a municipality has already taken property.

{¶ 49} Under ordinary R.C. Ch. 163 eminent-domain procedures, before a government body may institute the proceedings, the government must provide the landowner with a notice of intent to acquire his property at least 30 days prior to initiating an appropriation action. R.C. 163.04(A). If the parties are unable to agree on a conveyance, the government may then file a petition for appropriation with the court. R.C. 163.04(D). The landowner then has the ability to contest the taking, and the agency has the obligation to demonstrate by a preponderance of the evidence whether the "taking is necessary and for a public use." R.C. 163.021; *see also* R.C. 163.09(B). Only after the judge has determined that the government has the legal authority to take the property does a jury assess the amount of compensation that is due. R.C. 163.09(B)(2).

{¶ 50} Under the remedy that has been developed by our caselaw, most of the R.C. Ch. 163 procedures are inapplicable. There is no need to contest the government's right to make the appropriation—an inverse-condemnation action

presumes that a taking has already occurred regardless of the government's authority to do so. Thus, the R.C. Ch. 163 procedures simply become a mechanism to effectuate the right to compensation guaranteed by the Constitution. It is the mandamus court that determines whether a taking occurred, and the modified R.C. Ch. 163 procedures simply determine the amount of compensation owed for an already accomplished taking.

{¶ 51} In concluding otherwise, the court of appeals in this case found our decisions in *Moore* and *Clifton* controlling. And it is true that, read broadly, the logic of those opinions could be understood to foreclose the relief that Boggs seeks here. But *Clifton* emphasized that its holding was limited to the "facts and circumstances" of that case and did not mean that "an adjoining property owner may never have standing." *Clifton*, 2012-Ohio-780, at ¶ 30. *Moore* repeated the same cautions, making clear that *Clifton* "does not stand for the proposition that a property owner always lacks standing to bring a mandamus claim against a municipality when the affected property is outside the municipality's corporate limits" and stressing the "unique facts" of that case. *Moore*, 2012-Ohio-3897, at ¶ 30.

{¶ 52} In light of these cautions, we will not extend *Clifton* and *Moore* beyond their "unique facts." Rather, we make clear that in an inverse-condemnation action, a person who alleges that his property has been taken by a foreign municipality may pursue a mandamus action to force the municipality to institute appropriation proceedings for purposes of compensating the landowner for property that has been taken. Thus, we hold that Boggs has standing to pursue her mandamus claim.

{¶ 53} The only issue before us is whether Boggs has standing. That was the sole basis of the court of appeals' decision and the only issue raised in the propositions of law we accepted. In its briefing before this court, Cleveland attempts to defend the judgment below on the alternative basis that Boggs's claim

is barred by the statute of limitations. Cleveland presented the same argument in the court of appeals, but the court of appeals did not address the issue because it determined that Boggs lacked standing. *See* 2023-Ohio-3871, ¶ 45 (8th Dist.). Because the issue was not part of the propositions of law we accepted, we leave that matter for the court of appeals' consideration on remand.

### III. CONCLUSION

**{¶ 54}** The court of appeals asked the wrong question. Instead of asking whether Cleveland has the authority to institute an inverse-condemnation action, it should have asked whether a party whose property has been taken by a municipality has a right to receive compensation, even if the property is not located in that municipality.

**{¶ 55}** Because the Ohio Constitution makes clear that the answer to the latter question is yes, we reverse the judgment of the Eighth District Court of Appeals and remand for the court of appeals to consider the statute-of-limitations argument that it did not address. If Boggs prevails on that issue, the matter should then be remanded to the trial court to address the merits of Boggs's mandamus claim. To be successful, Boggs will need to show that Cleveland's actions amounted to a legally cognizable taking of her property.

Judgment reversed

and cause remanded.

_____

The Lindner Law Firm, L.L.C., and Daniel F. Lindner, for appellants.

Mark D. Griffin, Cleveland Director of Law, and Elena N. Boop, James R. Russell Jr., and Gilbert E. Blomgren, Assistant Directors of Law, for appellee.

_____