[Cite as *Craig v. Cromes*, 2025-Ohio-5759.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| ANGELO D. CRAIG, ET AL., | : | |
| Plaintiffs-Appellants, | : | No. 114917 |
| v. | : | |
| BRAD CROMES, ET AL., | : | |
| Defendants-Appellees. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 24, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-999435

### *Appearances:*

Ashbrook Byrne Kresge Flowers LLC, Benjamin M. Flowers, and Joseph P. Ashbrook; Hughes & Suhr LLC and Daniel R. Suhr, pro hac vice; and Spero Law LLC and Christopher Mills, pro hac vice, *for appellants*.

Roetzel & Andress, LPA, Stephen W. Funk, and Emily K. Anglewicz, *for appellees*.

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Ohio law permits counties to foreclose on homes when the owners of those homes fall behind in paying their property taxes. When the foreclosed homes

sell at public auction, the property owners are entitled to any surplus remaining after the tax debt is paid. But when the homes fail to sell after two public auctions, the tax-foreclosed properties are forfeited to the state pursuant to Ohio law. When this occurs, the county does not collect any taxes owed from the properties and the property owners do not receive the excess — if there is any — between what they owed in taxes and the fair market value of their home. The latter is what allegedly occurred for the plaintiffs-appellants Angelo Craig, Angela Taylor, and Abraham David (collectively, "the homeowners") in this case.

{¶ 2} The homeowners brought a class-action lawsuit against defendants-appellees Brad Cromes, in his official capacity as treasurer of Cuyahoga County, and Cuyahoga County (collectively, "the County"), alleging inter alia that the County (1) took their property without just compensation, (2) committed inverse condemnation, and (3) levied excessive fines against them.[1]

{¶ 3} The County filed a motion to dismiss, contending that the trial court should dismiss the homeowners' class-action lawsuit under Civ.R. 12(B)(1) for lack of subject-matter jurisdiction and Civ.R. 12(B)(6) for failure to state a claim. The trial court granted the County's motion pursuant to Civ.R. 12(B)(6) and dismissed the case. The homeowners now appeal, raising two assignments of error for our review:

---

[1] The homeowners raised three other claims but do not challenge the trial court's dismissal of the other claims on appeal.

1. The trial court erred in granting the motion to dismiss the freestanding constitutional claim and the inverse-condemnation claim seeking relief for violations of the Ohio Constitution's Takings Clause.

2. The trial court erred in granting the motion to the claim under the Ohio Constitution's Excessive Fines Clause, which the court never addressed.

{¶ 4} After review, we affirm the judgment of the trial court. The trial court properly dismissed the homeowners' freestanding-takings claim and inverse-condemnation claims because the Ohio Supreme Court has held that "the way to assert such a claim is to file a claim in mandamus to require the government to commence appropriation proceedings for the purpose of determining the amount of compensation that is owed." *State ex rel. Boggs v. Cleveland*, 2025-Ohio-5094, ¶ 2. We further conclude that the trial court properly dismissed the homeowners' excessive-fines claim because Ohio's tax-foreclosure scheme does not impose a "fine" within the meaning of the Excessive Fines Clause of the Ohio Constitution.

## I. Factual Background

{¶ 5} Each of the homes in this case were foreclosed upon in the Cuyahoga County Court of Common Pleas because of the owners not paying their property taxes.

{¶ 6} Craig owned a home on St. Catherine Avenue in Cleveland, Ohio that was foreclosed upon in March 2021 because of delinquent property taxes. The trial court found that Craig was delinquent in the amount of $620.97 plus "all taxes, assessments, penalties, and interest accruing between the date of the delinquent tax certificate and the date of the confirmation of the Sheriff's sale." The court ordered

that the property be sold at public auction for the minimum bid of $12,169.83 pursuant to R.C. 5721.19. After the property failed to sell for the minimum bid at two public auctions, the court entered an order of forfeiture on Craig's property in June 2022 and ordered that the property be forfeited to the state pursuant to R.C. 5723.01.

{¶ 7} Taylor owned a home on Pennington Road in Shaker Heights, Ohio that was foreclosed upon in December 2011 because of delinquent property taxes. The trial court found that Taylor was delinquent in the amount of $4,654.62 plus "all taxes, assessments, penalties, and interest accruing between the date of the delinquent tax certificate and the date of the confirmation of the Sheriff's sale." The court ordered that the property be sold at public auction for the minimum bid of $17,718.79 pursuant to R.C. 5721.19. After the property failed to sell for the minimum bid at two public auctions, the court entered an order of forfeiture on Taylor's property in August 2012 and ordered that the property be forfeited to the state pursuant to R.C. 5723.01.

{¶ 8} David owned a home on Eddy Road in Cleveland, Ohio that was foreclosed upon in April 2022 because of delinquent property taxes. The trial court found that David was delinquent in the amount of $3,383.68 plus "all taxes, assessments, penalties, and interest accruing between the date of the delinquent tax certificate and the date of the confirmation of the Sheriff's sale." The court ordered that the property be sold at public auction for the minimum bid of $27,322.34 pursuant to R.C. 5721.19. After the property failed to sell for the minimum bid at

two public auctions, the court entered an order of forfeiture on David's property in October 2022. The court ordered that the property be forfeited to the state pursuant to R.C. 5723.01.

{¶ 9} None of the homeowners appealed the trial courts' foreclosure or forfeiture judgments.

## II. Law and Analysis

### A. Standard of Review

{¶ 10} In support of their motion to dismiss, the County relied on Civ.R. 12(B)(1), lack of subject-matter jurisdiction, and 12(B)(6), failure to state a claim.

{¶ 11} When ruling on a Civ.R. 12(B)(1) motion, the trial court must determine whether a plaintiff has alleged any cause of action that the court has authority to decide. *Rheinhold v. Reichek*, 2014-Ohio-31, ¶ 7 (8th Dist.). Our standard of review on a Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction is de novo. *Id.* "The trial court is not confined to the allegations of the complaint when determining its subject-matter jurisdiction pursuant to a Civ.R. 12(B)(1) motion to dismiss, and it may consider material pertinent to such inquiry without converting the motion into one for summary judgment." *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.*, 48 Ohio St.2d 211 (1976), paragraph one of the syllabus.

{¶ 12} A Civ.R. 12(B)(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the sufficiency of a complaint. Before

a trial court can dismiss a complaint under Civ.R. 12(B)(6), it must appear beyond a doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to the relief sought. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975); *LeRoy v. Allen, Yurasek & Merklin*, 2007-Ohio-3608, ¶ 14. "The allegations of the complaint must be taken as true, and those allegations and any reasonable inferences drawn from them must be construed in the nonmoving party's favor." *Antoon v. Cleveland Clinic Found.*, 2015-Ohio-421, ¶ 7 (8th Dist.). We review a trial court's decision to dismiss a complaint pursuant to Civ.R. 12(B)(6) de novo. *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5.

{¶ 13} We note that the trial court granted the County's motion based solely on Civ.R. 12(B)(6). We further note that the homeowners only challenge the trial court's dismissal of three of their claims.

### B. Property Tax Law in Ohio

{¶ 14} In Ohio, the General Assembly has provided homeowners with multiple opportunities to protect their interests when they have fallen behind in paying their property taxes. First, a homeowner must have been delinquent on paying property taxes for well over one year before a county may initiate tax-foreclosure proceedings. R.C. 5721.13. Even before the county initiates foreclosure proceedings, the homeowner may enter into a "written delinquent tax contract with the county treasurer" for the payment of unpaid taxes in installments over a period of up to five years. R.C. 323.31. And then after a foreclosure action has been filed, a

homeowner may either pay the taxes owed or still enter into a payment plan to avoid foreclosure. R.C. 323.31; R.C. 5721.25. Finally, after the home has been foreclosed upon, the homeowner still has a right to redeem the property by paying the taxes owed. R.C. 323.78.

{¶ 15} After the home has been foreclosed upon, a court may order that a foreclosed property be sold, without appraisal, for not less than (1) the fair market value of the parcel, as determined by the county auditor or (2) the minimum bid, which is the total amount of taxes owed, assessments, charges, penalties, interest, and costs. R.C. 5721.19. Thus, under R.C. 5721.19, a tax-foreclosed parcel may not be sold for less than the minimum bid.

{¶ 16} If a tax-foreclosed property is sold at public auction, the clerk of court must notify the owner of any "residue of moneys from the sale . . . remaining to the owner . . . ." R.C. 5721.20(B). Essentially, this provision provides the owner with a statutory right to recover the "surplus proceeds" if the property is sold for more than the amount of taxes owed. The homeowner then has three years to demand the money from the county treasurer. *Id.* If, however, the property fails to sell at two public auctions, it "shall be forfeited to the state or to a political subdivision, school district, or county land reutilization corporation." R.C. 5723.01(A)(1). If no political subdivision, school district, or county land reutilization corporation files a petition with the court requesting that the property be forfeited to it, "the court shall forfeit the property to the state." R.C. 5723.01(A)(3). As we previously stated, the three

homes in this case failed to sell at two public auctions, and the court ordered that they be forfeited to the state.[2]

{¶ 17} Even after forfeiture, R.C. 5723.03 gives the former owner a right to redeem the property up until the state has "disposed of such property." R.C. 5723.03; *Treasurer of Cuyahoga Cty. v. Holloway*, 2022-Ohio-301, ¶ 14 (8th Dist.), citing *Jonke v. Rubin*, 170 Ohio St. 41, 44 (1959) (the right of redemption under R.C. 5723.03 is lost upon the state's sale of the property).

### C. Takings and Inverse-Condemnation Claims

{¶ 18} The Takings Clause under the United States and the Ohio Constitutions provide that the government shall not take private property for public use without just compensation. U.S. Const., amend. V; Ohio Const., art. I, § 19.

{¶ 19} The homeowners argue in their first assignment of error that the trial court erred when it dismissed their "freestanding constitutional" takings claim and their inverse-condemnation claim under the Ohio Constitution's Takings Clause. Although the property owners claim a violation of only the Ohio Constitution, they rely heavily on the United States Supreme Court case, *Tyler v. Hennepin Cty.*, 598

---

[2] In the foreclosure decree for Craig's home, the trial court made the finding that "Cleveland has declined the right to acquire said parcel. The Cuyahoga County Land Reutilization Corporation, an Electing Subdivision pursuant to Section 5722.01 of the Ohio Revised Code, has also declined the right to acquire said parcel." The trial court made the same finding in the foreclosure decree for David's home. But the foreclosure decree for Taylor's home, which was foreclosed on in 2012, does not include this language.

U.S. 631 (2023), in support of their argument that the County could not retain the surplus equity in their home above what they owed in property taxes.

{¶ 20} In *Tyler*, the United States Supreme Court addressed the question of whether a homeowner had sufficiently alleged a violation of the Takings Clause where she claimed that the Minnesota county where she lived sold her home for $40,000 at a foreclosure sale and kept $25,000 in excess of the $15,000 she owed in unpaid property taxes. *Id*. at 635-637. The United States Supreme Court held that the homeowner alleged a plausible takings claim because, under Minnesota's statutory foreclosure scheme, the county was allowed to confiscate for its own use more property than was due and homeowners had no opportunity to recover the excess funds from the sale of the property. *Id*. at 637.

{¶ 21} This court, however, has already explained that "*Tyler* is readily distinguishable" from Ohio's tax-foreclosure procedures. *Fig v. Lynch*, 2024-Ohio-3196, ¶ 34 (8th Dist.). This is because, unlike the law in Minnesota, if a tax-foreclosed home is sold at public auction in Ohio, "the homeowner retains the right to any surplus beyond the obligations owed to the treasurer or tax lien certificate holder." *Id*., citing R.C. 5721.20.

{¶ 22} Unlike the present case, the tax-foreclosed home in *Tyler,* 598 U.S. 631, was sold at a public auction and the Minnesota county retained $25,000 in excess proceeds. But in this case, the homes failed to sell at two public auctions. There were no proceeds — excess or otherwise. Thus, *Tyler* is not applicable to the present case.

{¶ 23} The County argues that the trial court properly dismissed the homeowners' complaint "because the Ohio Supreme [C]ourt has repeatedly held that mandamus is the 'correct action' and the 'appropriate action' to bring in order to prosecute an involuntary takings claim under Ohio law." The County cites to several cases in support of their argument, including *State ex rel. US Bank Trust, Natl. Assn. v. Cuyahoga Cty.*, 2023-Ohio-1063.

{¶ 24} We note that *US Bank* is distinguishable from the present case because it addressed the Ohio tax-foreclosure scheme that permits a county to transfer an abandoned tax-foreclosed property directly to the county land bank without a public auction. *Id*. at ¶ 1. However, *US Bank* is still relevant for one point. The Ohio Supreme Court explained in the case, "'When a property owner alleges the taking of private property, mandamus is the correct action to force the state to institute appropriation proceedings.'" *Id*. at ¶ 21, quoting *State ex rel. New Wen, Inc. v. Marchbanks*, 2020-Ohio-63, ¶ 15.

{¶ 25} Indeed, the Ohio Supreme Court recently reaffirmed this point in *State ex rel. Boggs*, 2025-Ohio-5094:

> When the government takes private property but has failed to institute formal condemnation proceedings, a property owner may assert a claim for inverse condemnation to recover the value of the property that has been taken. We have held that the way to assert such a claim is to file a claim in mandamus to require the government to commence appropriation proceedings for the purpose of determining the amount of compensation that is owed. *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.*, 2001-Ohio-1276, ¶ 21.

*Id.* at ¶ 2. This was not a pronouncement of new law but rather a statement of well-established precedent. *See TR Constr. Inc. v. Summit Cty., Ohio*, 2023 U.S. Dist. LEXIS 170988 (N.D. Ohio Sept. 26, 2023), citing *State ex rel. Cuyahoga Lakefront Land, L.L.C. v. Cleveland*, 2016-Ohio-7640, ¶ 13 (The U.S. District Court for the Northern District of Ohio granted summary judgment to Summit County on the state-law-takings claim because Ohio does not recognize a private cause of action related to takings; instead "the proper course of action is to pursue a writ of mandamus.").

{¶ 26} We therefore agree with the County that the trial court properly dismissed the homeowners' takings and inverse-condemnation claims pursuant to Civ.R. 12(B)(6).

{¶ 27} The homeowners' first assignment of error is overruled.

**D. Excessive Fines**

{¶ 28} In their second assignment of error, the homeowners argue that the trial court erred when it dismissed their claim under the Excessive Fines Clause of the Ohio Constitution. They claim that "the theft of their surplus value was 'at least partially punitive.'"

{¶ 29} The Ohio Constitution provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Ohio Const., art. I, § 9. The language of the Ohio Constitution is identical to the Excessive Fines Clause set forth in the Eighth Amendment of the United States Constitution. *State v. Weitbrecht*, 86 Ohio St.3d 368, 370 (1999). Both prohibit the

imposition of excessive fines as punishment. *State v. O'Malley*, 2022-Ohio-3207, ¶ 36; *Willowick Bldg. Dept. v. Shoregate Towers NS, LLC*, 2024-Ohio-5650, ¶ 45 (11th Dist.). Although the Eighth Amendment prohibition is not generally applied to civil orders, the United States Supreme Court has held that both criminal and civil penalties are subject to the Excessive Fines Clause. *Austin v. United States*, 509 U.S. 602, 607-609 (1993) (explaining that nothing in the text or history of the Eighth Amendment limits its application to only criminal proceedings).

{¶ 30} In the property-law context, the United States Supreme Court has traditionally applied the Excessive Fines Clause to statutes that impose property forfeiture in addition to other criminal punishments. In *Austin*, the United States Supreme Court held that the Excessive Fines Clause applied to forfeiture of a gun, drug paraphernalia, and approximately $4,700 that was seized after the defendant was convicted of selling cocaine. *Id.* at 604 (the court remanded to the lower court to consider whether forfeiture of the items was excessive). In *United States v. Bajakajian*, 524 U.S. 321 (1998), the Court held that forfeiture of $357,144 after the defendant was convicted of failing to report the money to a federal customs inspector at an airport when he was planning to leave the United States violated the Excessive Fines Clause. *Id.* at 344.

{¶ 31} To constitute a fine under the Eighth Amendment, the forfeiture must constitute punishment. *O'Malley* at ¶ 36. The "prohibition against excessive fines" applies to "two types of forfeitures, in rem forfeitures and in personam forfeitures." *O'Malley* at ¶ 36, citing *Bajakajian* at 333. In *O'Malley*, the Ohio Supreme Court

stated that "[a]n in rem forfeiture is a civil forfeiture that is applied to 'lawful property [that] has committed an offense.'" *Id*. at ¶ 37, quoting *Austin* at 624 (Scalia, J., concurring in part and concurring in judgment). And "[a]n in personam forfeiture . . . is a forfeiture that is used to punish an individual for committing a criminal offense and is thus considered a fine." *Id*., citing *Bajakajian* at 328, 332.

{¶ 32} To expand on what Justice Scalia stated in *Austin*, in personam forfeitures "punish the owner's criminal conduct, while [in rem forfeitures] are confiscations of property rights based on improper use of the property, regardless of whether the owner has violated the law." *Austin,* 509 U.S. at 624 (Scalia, J., concurring in part and concurring in judgment). Justice Scalia further explained:

> Statutory in rem forfeitures have a long history. *See generally Calero-Toledo v. Pearson Yacht Leasing Co*., 416 U.S. 663, 680-686 (1974). The property to which they apply is not contraband . . . , nor is it necessarily property that can only be used for illegal purposes. The theory of in rem forfeiture is said to be that the lawful property has committed an offense. *See, e.g.*, *The Palmyra*, 25 U.S. 1 (1827) (forfeiture of vessel for piracy); *Harmony v. United States*, 43 U.S. 210 (1844) (forfeiture of vessel, but not cargo, for piracy); *Dobbins's Distillery v. United States*, 96 U.S. 395, 400-403 (1878) (forfeiture of distillery and real property for evasion of revenue laws); *J. W. Goldsmith, Jr. Grant Co. v. United States*, 254 U.S. 505, 510-511 (1921) (forfeiture of goods concealed to avoid taxes).

*Id.*

{¶ 33} The U.S. Supreme Court further explained in *Austin* that, on the one hand, a penalty or forfeiture that is purely remedial is not a fine but, on the other hand, a penalty or forfeiture that "can only be explained as serving in part to punish" is a fine. *Id*. at 610. A forfeiture is "remedial" if, for example, it removes dangerous

or illegal items from society or compensates the government for a loss. *Id.* at 621; *see also Bajakajian*, 524 U.S. at 329.

{¶ 34} In *Austin*, the U.S. Supreme Court concluded that a federal statute that provides for the forfeiture of vehicles and real property used or intended for use in drug-trafficking crimes was punitive. The Court described several reasons for its conclusion, including (1) the statute expressly provides an innocent-owner defense, making forfeiture dependent on the culpability of the owner and evidencing a congressional intent to punish only those involved in the crime of drug trafficking; (2) the statute ties forfeiture directly to the commission of a criminal offense; and (3) the legislative history shows that Congress enacted the forfeiture provision in order to provide a "powerful deterrent" against committing drug crimes. *Id.* at 619-20.

{¶ 35} Five years later in *Bajakajian*, the U.S. Supreme Court found that forfeitures pursuant to 18 U.S.C. 982(a)(1) were punitive for similar reasons. Section 982(a)(1) provides for forfeiture of "any property . . . involved in" various offenses, including the offense of transporting more than $10,000 in currency into or out of the United States without reporting it. In finding the statute to be punitive, the Court noted that (1) the statute directs that forfeiture be included as part of the sentence imposed on a person convicted of willful violation of the statutory reporting requirement; and (2) the forfeiture order is imposed at the conclusion of criminal proceedings and only after the defendant has been convicted of a felony. *Id.* at 328.

{¶ 36} Here, however, the forfeitures did not occur because of criminal behavior. Rather, they occurred because the homes failed to sell for the minimum bid after foreclosure because of delinquent taxes. Ohio's tax-forfeiture scheme is a debt-collection system whose primary purpose is to assist the government in collecting past-due property taxes. We therefore find that Ohio's tax-foreclosure scheme does not impose a "fine" within the meaning of the Excessive Fines Clause of the Ohio Constitution.

{¶ 37} The homeowners rely on Justice Gorsuch's concurring opinion in *Tyler*, 598 U.S. 631, in support of their excessive-fines argument. In *Tyler*, the justices unanimously concluded that it was unnecessary to reach the homeowner's Excessive Fines claim. *Id.* at 648. Nonetheless, Justice Gorsuch issued a concurring opinion suggesting that the tax-foreclosure scheme under review in the case might implicate the Eighth Amendment's Excessive Fines Clause. He argued that even though the scheme only imposed economic penalties "to deter willful noncompliance with the law," such penalties were still fines and the Constitution deems that "[t]hey cannot be excessive." *Id.* at 649-650 (Gorsuch, J., concurring). As we previously stated, however, the tax-foreclosure scheme under review in *Tyler*, which did not provide an opportunity for property owners to obtain the excess surplus after their tax-foreclosed home was sold at public auction, is distinguishable from the present case. Moreover, Justice Gorsuch's concurring opinion was not adopted by the majority of justices and is therefore not binding law.

{¶ 38} Accordingly, we overrule the homeowners' second assignment of error.

{¶ 39} Judgment affirmed.

It is ordered that appellees recover from appellants the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
DEENA R. CALABRESE, J., CONCUR